Aaron v. Mendel.

CASE 86—EQUITY—APRIL 8.

1r 427
1r 601

# Aaron v. Mendel.

#### APPEAL FROM LOUISVILLE CHANCERY COURT.

1. The relation between a creditor and surety is one of trust and confidence, and demands the utmost good faith on the part of the creditor.

2. The appellant having arrived at full age, released her guardian under circumstances that showed fraud upon the part of the latter. But the appellant waited for four years to attack the release for fraud. This laches is fatal to her right of recovery against the appellee as. surety.

RUSSELL & HELM FOR APPELLANT.

The release of J. T. Mendel was obtained by fraud, and cannot protect the surety. (Bigelow on Estoppel, 473, 540; Howard v. Huston, 2 El. & B., 1; 28 Me., 520, 540; 38 Ill., 152; McAdams v. Hawes, 9 Bush, 23.)

HARLAN & WILLSON AND BOLAND & BURNETT FOR APPELLEE.

1. The release of the appellant's guardian, although it may have been obtained by fraud, released the appellee as his surety.

2. Having failed to attack the release for four years, the appellant is. estopped by lapse of time from a recovery against the appellee as surety upon the bond. (Kirby v. Taylor, 6 Johnson's Chy. Rep., 248; McClelland v. Kennedy, 8 Met., 252.)

JUDGE COFER DELIVERED THE OPINION OF THE COURT.

David Mendel died in 1865, leaving a widow and five or six infant children.

His widow, Rachel Mendel, was appointed guardian of the children, and continued in that capacity until 1873, when she resigned her trust and was succeeded as to four of the children, who were still minors, by Z. D. Mendel, one of the children who had attained majority.

In the meantime certain real estate which descended from. David Mendel to his children had been sold under a judg-. ment rendered in a proceeding under the statute for the sale

of the real estate of infants, and the sale money had been paid into the depositary of the court.

Soon after his qualification as guardian Z. D. Mendel applied to be permitted to withdraw that part of the money belonging to Eva, one of his wards.

Before the desired permission was given he was required to execute a covenant for the faithful discharge of all his duties as guardian under the statute under which the land was sold. He gave the required bond, with his mother, Rachel Mendel, and the appellee, Julius Mendel, as his sureties, and thereupon withdrew Eva's share of the proceeds of the sale of the realty.

In October, 1874, Eva married Benjamin Aaron, who was then only about twenty years old, and in September, 1878, she and her husband instituted this suit against her late guardian and his sureties on the covenant above referred to, alleging that no part of the money received by the guardian for her had been paid or accounted for.

Z. D. and Rachel Mendel made no defense, and judgment by default was rendered against them.

Julius Mendel answered, among other things, that Eva, after she attained her majority, in consideration of a certain note for two thousand dollars, executed to her by her mother, the said Rachel Mendel, released and acquitted her guardian, Z. D. Mendel, of all claim or demand against him as such.

Other defenses were set up, but it is unnecessary to state them.

On final hearing, the court dismissed the petition as to Julius Mendel, and the plaintiffs have appealed.

Some objections are taken to the manner in which the release is described in the answer, and to the fact that it pur-

ports to release Z. D. Mendel from liability as administrator and not as guardian.

The answer describes the release as dated August 3d, 1874, at which time Eva had not attained her majority; but the writing, which is made an exhibit and filed with the answer, bears date September 3, 1874, two days after she attained the age of twenty-one years.

This misdescription was not material. It was alleged that the release was executed after she reached majority, and the paper being filed with the pleading, must control and correct it.

Z. D. Mendel was not administrator of David Mendel. His only indebtedness to Eva on account of the estate of their father grew out of his guardianship for her; and the parties all understood and treated the release as relating to his indebtedness as guardian.

The evidence shows satisfactorily that the release was unfairly procured, and although there is no evidence whatever of any complicity on the part of Julius Mendel with Z. D. and Rachel Mendel in procuring the release, yet if the release had been attacked within a reasonable time after it was obtained, or after the influences which induced its execution were removed, and after the appellants were in a condition to assert their rights, we should not hesitate to hold that it would afford no protection even to the innocent surety.

But from the nature of the transaction Mrs. Aaron must have been aware, at the time she executed the writing, that it was unjust and ought not to bind her. Soon after her marriage she and her husband took legal advice on the subject and were fully advised of their rights in the premises; yet they stood by apparently acquiescing in what she had done for four years after the release was executed, and for three

years after her husband attained his majority, and after
they were fully advised of their rights, without any step to
obtain relief, and without notice to the surety that they
would not abide what had been done.

During the greater part of this time Julius Mendel was
aware that the release had been executed, but was not, as
far as appears, aware of the means by which it had been
procured, or that Mrs. Aaron or her husband was dissatis-
fied with it.

Knowing that a release had been given, and hearing no
complaint of it, he had a right to assume that it was satis-
factory, and that his liability as surety for the guardian was
at an end.   He was not bound to inquire into the terms of
the settlement or the manner in which the release was ob-
tained, but, from his knowledge of its existence, and being
in ignorance of the fraud and undue influence by means of
which it was procured, there was nothing to put him on
inquiry, and he not only had no reason to seek indemnity,
but, on the facts known to him, he had no legal ground upon
which to ask it.   Thus matters stood for at least three years,
during all of which time Aaron and wife knew all the facts,
as well as their legal rights growing out of them, but they
failed to take any steps to avoid the release, or even to give
notice to the surety that they intended to do so.

The relation between a creditor and one known to him to
be bound only as surety for another, is one of trust and con-
fidence, and demands the utmost good faith on the part of
the creditor.   (Story's Equity, sec. 324; Burks v. Wonter-
line, 6 Bush, 20; Mount v. Tappey, 7 Ib., 617.)

Was the conduct of Aaron and wife such as good faith
toward the surety demanded?

As long as they failed to repudiate the settlement and release, the hands of the surety were tied. Their silence was equivalent to a declaration that they were satisfied, and the surety, knowing that the release had been executed, was lulled into supposed security. He neither knew the necessity for seeking indemnity nor had the legal right to demand it. He had no right to pay the debt, and assume himself the position of a creditor. Until they should elect to avoid the settlement and release there was no debt to pay, and this they might never do; and, having kept him so long in a position in which he was authorized by their conduct to believe he was finally discharged, and in which he was deprived by them of all right to seek indemnity, they were guilty of such bad faith toward him as ought, in equity and good conscience, to prevent them from now recovering.

In Kerby v. Taylor (6 Johns. Chy., 248) Chancellor Kent held that a release of the principal by the ward, without the knowledge or consent of the surety, and acquiescence in the release for a period of twenty months, there being no pretense of fraud set up, was "a complete exoneration of the surety. He had a perfect right to regard the discharge as valid, and it deprived him in the meantime of the opportunity of obtaining indemnity."

That there was fraud in this case and none in that can have no other effect than this: as long as the fraud was concealed the ward could take no step to avoid the release on that ground, and, consequently, non-action on his part would do no wrong to the surety; but when the fraud becomes fully known, and the ward is fully advised as to his rights, the fraud can no longer present an obstacle to his proceeding to avoid the release, and the consequences should be pre-

cisely the same as if the release had been procured without fraud.

It is no answer to the argument drawn from the great delay to take steps to avoid the release to say that the principal was insolvent; and no indemnity could have been procured by the surety if he had been immediately informed of the fraud and the election of the ward and her husband to avoid the release on that gronnd.   It is impossible to say what might have been accomplished either by legal proceedings or by personal persuasion, and moreover, when the creditor has been guilty of bad faith toward the surety, which might have injured him, the court will not stop to inquire whether he has actually been injured or not.

Nor does the fact that Mrs. Aaron was a married woman, and that the money was due in her right, affect the question.

She was sole when the release was given, and she knew she had not voluntarily signed it, and her subsequent marriage could not relieve her from the duty already imposed to repudiate it within a reasonable time.

We are therefore of the opinion that the judgment should be affirmed.