CASE 5. — ACTION BY J. T. CARTER AND ANOTHER AGAINST H. L. TUCKER AND OTHERS.—April 26, 1910.

## Carter, &c. v. Tucker, &c.

Appeal from Ohio Circuit Court.

T. F. BIRKHEAD, Circuit Judge.

From the judgment plaintiffs appeal and defendants cross-appeal.—Affirmed on both the original and cross-appeal.

1. Corporations—Organization—Capital.—Evidence held insufficient to show that the capital stock of a corporation proposed to be formed to operate coal lands on which a partnership had leases and options was to be only a certain sum.
2. Partnership—Rights of Partners.—The mere fact that defendant proposed to form a corporation to take over partnership properties at an agreed price did not make him the agent or trustee of his partners to the extent of rendering him liable to the partnership for the compensation which he received from the corporation for his services as a promoter thereof; his services being independent of the partnership.

GLENN & SIMMERMAN for appellants.

J. K. FREEMAN and BARNES & ANDERSON for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Appellants, J. T. Carter and M. W. Heltsley, and appellee, H. L. Tucker, formed a partnership in the latter part of the year 1908 for the purpose of securing options and leases on coal and mineral lands in and about Rockport, Ohio county, Ky. Carter lived in Rockport and owned about 300 acres of land near

the corporate limits of the town. Heltsley, his son-in-law, lived in Union county, Ky., and was at work in a mine in that county of which appellee Tucker was superintendent. Previous to the formation of the partnership, Tucker had been a traveling sales-man for the Morgan, Gordin Electric Company, and, as such, was engaged in selling mining machinery throughout the country. In that capacity he had become acquainted with capitalists, operators, and persons interested in the development of coal prop-erty. The contract of partnership is as follows: "This contract is made this the 28th day of Decem-ber, 1908, by and between H. L. Tucker, of Central City, Kentucky, J. T. Carter, of Rockport, Ken-tucky, and M. W. Heltsley, of Central City, Ken-tucky, all parties being interested alike in certain tracts hereinafter described. The said parties have this day formed a partnership and are to have each one-third (1-3) interest in certain leases or options to be taken in the name of H. L. Tucker and when such options or leases on coal lands in Ohio county, Kentucky, are made to said H. L. Tucker, then the other two parties named in this contract are to be equal owners and share with Tucker in said options or leases. The expense of taking up these options and securing these leases is to be borne by all three parties to this contract and such other expenses as will naturally arise in this partnership are to be borne by the parties hereto. The parties hereby au-thorize and empower said H. L. Tucker to secure said leases and obtain an execution thereof and ratify and confirm his acts in so doing, and so long as said leases or options are held in the name of said Tuck-er they are to be the property of this partnership and subject to their control and disposition as they may

hereafter see fit.  Witness the hand of all parties, this the day and date first herein written.  [Signed] H. L. Tucker. J. L. Carter. M. W. Heltsley.''

After this contract was entered into, Tucker proceeded to secure certain leases or options.  Included within the leases so obtained was a certain number of acres belonging to Carter.  Upon the land so leased Carter and the other lessors were to receive a stipulated royalty per ton.  After the leases were obtained the question of the formation of the corporation to take over the leases and options was discussed.  According to the evidence for appellants, a corporation with a capital stock of $25,000 was to be organized, the leases and options were to be turned over to that corporation, and appellants and appellees were to receive $9,000 worth of stock in payment therefor.  According to the evidence for appellee, appellants simply suggested that the amount of the capital stock should be $25,000.  He at the time told them that, if they received $9,000 worth of stock for their options and leases, and paid out $3,000 for other options, the amount for which they could sell the remainder of the stock in a $25,000 corporation would be insufficient to develop the property.  They thereupon agreed to form a corporation with a capital stock of $50,000, and of this stock appellants and appellee were to receive $9,000, which was to be divided equally between appellants, Carter and Heltsley, and appellee Tucker.

On the 13th day of March, 1909,  a  corporation known as the ''Rockport Coal Company'' was organized under the laws of this state by Tucker, one Charles F. Dreihs, John T. May, E. B. Miller, and C. A. Morris, with a capital stock of $50,000; divided into 500 shares of $100 each, for the purpose of min-

ing and selling coal, manufacturing and selling coke, and manufacturing and selling ice, steam, electric power, etc. Of the capital stock Tucker took 150 shares, Dreihs 50 shares, May 25 shares, Miller 25 shares, and Morris 25 shares. Subsequently, Tucker succeeded in getting P. O. McKinney, of Zanesville, Ohio, to subscribe for and take 125 shares of the capital stock. At a meeting of the stockholders of the company, held on March 22, 1909, the corporation offered to take over the contracts, options, and leases which Tucker had secured and to develop the properties as required by the terms of the respective leases. The consideration therefor was $9,000 of the capital stock, at the par value of $100 per share. At this meeting, one of the incorporators moved that Tucker be allowed for his services in promoting the corporation, getting together the incorporators, placing the stock, etc., as full remuneration for his expenses incurred and time expended, $6,000 of the capital stock. There was no objection to this motion, and it was carried unanimously. Appellant Carter was present at this meeting, though he claims that he did not know that the capital stock was fixed at $50,000, or that Tucker was allowed $6,000 of the capital stock for promoting the corporation.

On April 20, 1909, appellants instituted this action against appellee Tucker and the Rockport Coal Company. It was charged in the petition that Tucker was guilty of fraud by transferring the leases and options to a corporation with a capital stock of $50,-000 when he had theretofore agreed to transfer to a corporation with a capital stock of only $25,000; that by reason of this fact the value of their stock had been depreciated one-half. It was also charged that Tucker received $15,000 of the capital stock of

the corporation for the leases, options, etc., and that they were each entitled to $5,000 of this capital stock. They asked that the partnership be settled, and that the Rockport Coal Company be restrained from issuing to Tucker any stock in excess of $5,000. Appellee Tucker and the Rockport Coal Company filed demurrers to the petition, which were overruled. Thereupon appellee filed an answer denying the allegations of the petition, and pleading affirmatively that the details of the transaction were according to his contention; and he also pleaded that each of the appellants was indebted to him in the sum of $48 for expenses incurred in procuring the leases, options, etc. After the issues were completed and proof heard, appellants filed an amended petition alleging that the properties and labor performed were worth $15,000. Appellee Tucker put in issue this allegation of the amended petition, and pleaded that the properties were not worth this sum and did not sell for more than $9,000 of the stock. Upon submission of the case the court directed that the $9,000 worth of stock be equally divided between Carter, Heltsley, and Tucker. Judgment was given in favor of Tucker against each of the appellants for $48.50 with interest from April 2, 1909. To secure the payment of these sums Tucker was given a lien on the stock of appellants, and the court directed a sale of the stock, or so much thereof as was necessary to pay these sums. It was also adjudged that the partnership be dissolved. That part of the petition in which appellants sought to recover their interest in the 60 shares of stock voted to Tucker for promoting the corporation was dismissed. Appellants were adjudged their costs against Tucker and the Rockport Coal Company. From that portion of the judgment dismiss-

ing the petition as to appellants' interest in the 60 shares of capital stock, they have appealed, and from that portion of the judgment awarding appellants costs against appellee Tucker and the Rockport Coal Company, the latter have prosecuted and have been granted a cross-appeal.

It is insisted by counsel for appellants that the partnership contemplated the formation of a corporation; that in the formation of the corporation appellee Tucker acted as agent and trustee for his copartners; that under the circumstances they are entitled to receive, not only their pro rata of the $9,000 worth of stock, but their pro rata of the $6,000 worth of stock issued to Tucker for his services in promoting the corporation. It will be observed, however, that, even according to appellants' contention, they were to receive of the partnership properties only $9,000 worth of stock in a $25,000 corporation. There is nothing to show that they were ever to receive more than that. On the other hand, appellee Tucker contends that they were to receive $9,000 worth of stock in a $50,000 corporation. Upon the question whether or not the capital stock of the proposed corporation was to be $25,000 or $50,000 the evidence is very conflicting. While appellants' testimony is one way and appellee's the other, the circumstances rather support the latter's evidence. The fact that $13,000 worth of working capital as is shown by the evidence would not be sufficient to develop the property, and the further fact that a $50,000 corporation was actually formed, and Carter was present when the articles of incorporation were read and the amount of the capital stock stated, and made no objection to the amount, tend strongly to corroborate appellee. That being the case, we are unable to say

that the evidence justifies the conclusion that the capital stock of the proposed corporation was to be only $25,000. Eliminating this question from consideration, it follows that appellants and appellee received from the proposed corporation all the stock that they agreed and expected to receive for the partnership properties. So far as the contract of partnership is concerned, there is nothing in it to indicate that appellants and appellee were partners in anything except the leases and options therein referred to. Nor is any additional agreement shown whereby appellants were to share with appellee in any compensation which he might receive for promoting the company. If the evidence had shown that appellee was given $15,000 worth of the stock for the properties in question, and that the $6,000 worth of stock allowed him as promoter was simply a device to enable him to profit at the expense of his partners, a different question would be presented. The uncontradicted evidence, however, is to the effect that the $6,000 in stock was paid to appellee for his services in getting up the corporation. This is shown, not only by the minutes of the meeting at which the $6,000 worth of stock was allowed appellee, but by the evidence of every witness who testified upon the subject. The question whether or not the corporation had the right to issue the $6,000 worth of stock to appellee for his services is one we deem unnecessary to determine. No issue upon this point is made in the pleadings. It is not contended that appellants did any of the work necessary to form the corporation; all the work was done by Tucker, himself. If the incorporators saw fit to pay appellee for his services, appellants could only recover their pro rata part thereof by showing themselves entitled to it.

Having received what they agreed to take for the properties in question, they cannot recover a part of the compensation paid to appellee in the absence of an agreement to that effect. The mere fact that appellee proposed to form a corporation to take over the partnership properties at an agreed price did not make him the agent or trustee of his partners to the extent of rendering him liable to the partnership for the compensation which he received from the corporation for his services as a promoter thereof. When he sold the leases and options for $9,000 worth of stock, he did all that was contemplated by the partnership agreement. His services as promoter were entirely independent of the partnership.

We conclude that that part of the judgment awarding appellants costs against appellees was proper.

Judgment affirmed, both on the original appeal and cross-appeal.