## Rockport Coal Company, et al v. Carter, et al.

(Decided February 24, 1914.)

### Appeal from Ohio Circuit Court.

1. Reformation of Instruments—Evidence.—To justify the reformation of a contract upon the ground of mistake, the evidence must be clear and the proof satisfactory that a mistake has been made.

2. Corporations—Representation of Corporation by Officers and Agents—Notice to Officer or Agent as Affecting Corporation.—Where one of three partners, in whose name had been taken certain leases for the partnership, sold and assigned said leases to a corporation which he formed and organized, he was acting for the partnership; and although a shareholder, director and president of the corporation, his interest was adverse to that of the corporation, and the corporation is not chargeable with his knowledge of an unrecorded contract by the terms of which he had agreed to pay an increased royalty on a lease executed by one of said partners to him, in the event he should assign the lease to a third party.

3. Judgment—Merger and Bar of Causes of Action and Defenses—Decision on Merits.—To constitute a former judgment a bar, it must have been on the merits, and an adjudication of the vital issue involved.

BARNES & SMITH for appellants.

GLENN & SIMMERMAN for appellees.

OPINION OF THE COURT BY JUDGE HANNAH—Affirming in part and reversing in part.

Appellant, H. L. Tucker, and appellee, J. T. Carter, together with one M. W. Heltsley, on December 28, 1908, formed a partnership for the purpose of obtaining options and leases on coal and mineral lands in Ohio County. The leases were to be taken in the name of Tucker, but each of the three partners was to be equally interested therein. Carter executed a lease to Tucker covering his own lands, which lease was acknowledged

by him on December 28, 1908, and by his wife on December 29, 1908. This lease provided for a royalty to be paid by the lessee to the lessors, of two cents per ton on all coal mined from the lands so leased.

At the time of the execution of said lease by Carter's wife, there was executed a supplemental contract signed and acknowledged by H. L. Tucker, by the terms of which he agreed that if he should assign the said lease to a third party, the royalty to be paid to said Carter and his wife on the coal mined from the lands covered by said lease, should be two and one-half cents per ton instead of two cents per ton as provided in the said lease. The original lease was recorded on January 7, 1909, but the supplemental contract was not recorded until April 2, 1909. On March 27, 1909, appellant Rockport Coal Company, a corporation, was organized, the capital stock being fixed at fifty thousand dollars, which stock was subscribed for by various persons, strangers to these contracts, appellant Tucker and appellee Carter and Heltsley each receiving three thousand dollars of said stock, this being given to them for the leases held by them under said partnership. Tucker also received an additional six thousand dollars of this stock for his services and expenses in promoting and organizing the corporation. The remainder of the subscriptions were paid in cash.

On that day, Tucker transferred and assigned to said corporation the leases held by said partnership, including the original lease from appellees, Carters. The coal company immediately thereafter commenced work, and expended some ninety thousand dollars in erecting a coal plant on said property, and commenced the mining of coal therefrom.

After the company commenced operations, a difference arose between Tucker, Carter and Heltsley over the distribution of the six thousand dollars in stock which Tucker had received for his services in promoting and organizing the corporation, Carter and Heltsley claiming that this stock was given Tucker in payment for the leases held by the partnership, and suit was brought by said Carter and Heltsley seeking a division of said stock, but in this they were unsuccessful. See 138 Ky., 34; 127 S. W., 498.

After this difference arose between Carter, Heltsley and Tucker, Carter sued the coal company for the

royalty on twenty thousand tons of coal mined on his land, at the rate of two and one-half cents per ton, as set out in the said supplemental contract, the company offering to pay him only two cents per ton as provided in the original lease.

Thereafter, appellant, Tucker, instituted in the Ohio Circuit Court, this action in equity aganst appelees, J. T. Carter and wife, seeking a reformation of the supplemental contract, upon the ground that it does not express the true intent of the parties and was entered into by mutual mistake of the parties thereto. Appellant, Rockport Coal Company, joined in the petition, and sought to have said supplemental contract cancelled in so far as it constituted or purports to be a cloud upon appellant company's title, or the basis of claim against it, by appellees. Upon a trial of the action, the chancellor denied both plaintiffs the relief prayed for, and dismissed the petition; and plaintiffs appeal.

At the time of the making of the partnership agreement and the execution of the original lease, defendant, J. T. Carter and his son-in-law, M. W. Heltsley, and plaintiff H. L. Tucker were contemplating the opening and operation of a coal mine on the lands of Carter and others in Ohio County; and plaintiff Tucker, contends that after the execution of said lease, Carter proposed to him that if the project by which he, said Carter, expected to become interested in the development of the coal mine, should fail of consummation, and the lease which he had executed to Tucker should be sold outright to other and stranger interests, in and with which said Carter had no connection, and from which he should receive no financial gain or remuneration by reason of the execution of said lease except such royalty as might be paid for the coal mined from his land, then and in that event he should receive a higher royalty than two cents per ton; and that plaintiff, Tucker, acceded to and accepted said proposition of defendant, Carter; and that such was in fact the true contract of the parties.

Plaintiff Tucker contends that when it was undertaken to reduce such contract and understanding to writing by mutual mistake of the parties and the draughtsman, language not sufficiently explicit and not clearly specifying the terms of the agreement was used; while defendant, Carter, contends that there was no mistake made in drawing up the contract, and that the writing

contains the true contract of the parties. The supplemental contract in question reads as follows:

"This contract entered into between J. T. Carter and S. E. Carter, his wife, of Rockport, Ohio County, Kentucky, parties of the first part, and H. L. Tucker, of Central City, Kentucky, party of the second part, witnesseth: the said party of the second part does hereby agree that should he transfer the lease on three hundred acres of coal located in Ohio County, Kentucky, to a third party, then the said parties are to receive two and one-half cents per ton for all coal mined from the lease obtained this day from the said first parties."

Plaintiff, Rockport Coal Company, contends that at the time of the transfer to it by Tucker of the original lease from Carter to said Tucker, it did not know of the existence of this supplemental contract, which was not recorded until six days after the said transfer was made; that the defendants had created a cloud upon its title by giving out and proclaiming that said supplemental contract entitles them to a royalty of two and one-half cents on all coal mined from their lands so leased; and that said defendants are coercing the payment, by suit, of such royalty; that said plaintiff is in the possession of the lands so leased, has installed thereon a costly mining plant; and is mining and removing coal therefrom; and that the supplemental contract in question should be cancelled in so far as it purports to cast a cloud upon its title; and that defendants should be perpetually enjoined from prosecuting suits attempting to coerce the payment of the royalty claimed by them under said contract.

1. As to the right of plaintiff, Tucker, to have reformation of the supplemental contract, the evidence is conflicting. His testimony supported his contention in that respect as hereinbefore set out. Heltsley, one of the members of the partnership referred to, and a son-in-law of defendant, Carter, testified as follows: "Well, the question arose when Mr. Tucker spoke in regard to a stock company to open and operate the mines, as we were not at the time financially able to, as he thought, and there was some objections by Mr. Carter in regard to that; and he thought he was not getting enough for his coal in case it was transferred to a company. Mr. Tucker then agreed that in case we transferred the leases, he would pay an additional half a cent a ton, making two and one-half cents." He also stated that Mrs. Carter agreed to

execute the lease, provided the supplemental contract was executed.

Defendant, Carter, testified that it was first contemplated that the three partners should open and operate a coal mine on his lands; and that when Mr. Tucker suggested incorporating, he then said he ought to have more royalty if that was done; and that Mr. Tucker agreed to that, and thereupon executed the supplemental contract in question.

Plaintiff, Tucker, is the only witness testifying that there was a mistake in drawing up the contract; while both Heltsley and Carter testified that there was no mistake and that Tucker, himself, had this writing prepared in their absence. The draughtsman of the contract did not testify. So the evidence is not clear or the proof satisfactory that a mistake was made; in fact, the proof is clear that no mistake was made.

To justify the reformation of an instrument on the ground of mistake, the evidence must be clear and the proof satisfactory that a mistake has been made. Graves v. Mattingly, 69 Ky., 361; Crabtree's Admr. v. Sisk, 30 R., 572, 99 S. W., 268. The chancellor was therefore justified in refusing to decree the reformation prayed for by plaintiff, Tucker.

2. That branch of the case whereby appellant, Rockport Coal Company, sought the cancellation of said supplemental contract in so far as the same constitutes or purports to be a cloud upon its title, presents a different proposition.

As has been seen, this contract was not of record at the time of the assignment and transfer by said Tucker to the Rockport Coal Company of the original lease. This corporation is capitalized at fifty thousand dollars, thirty-five thousand dollars of which stock is owned and held by strangers to this supplemental contract; and there is no satisfactory proof that any of the stockholders or officers of the corporation had any knowledge of this supplemental contract except Tucker and appellee, Carter. After the corporation was organized and the assignment of the original lease was made by Tucker, but at the same meeting, Tucker was elected president of the corporation. Because of this fact, appellee argues that the corporation is chargeable with the knowledge and notice had by said Tucker of the contract in question. But, it must be remembered that Tucker, ap-

pellee Carter, and Heltsley were partners in the leases assigned by Tucker to the corporation; and in the transactions by which the leases owned by this partnership were assigned to the corporation, Tucker was acting for the partnership; his interest in that matter was adverse to the corporation, and he could not serve both at the same time in a transaction of this character. The corporation, therefore, is not chargeable with notice by reason of his knowledge; nor by reason of the knowledge of appellee, Carter, who was a shareholder, and who was also present when the leases were assigned to appellant company, and also refrained from making mention of this supplemental contract.

It is evident, therefore, that appellant corporation is not a party to this supplemental contract, nor bound in any way in respect thereto; and that, in so far as the same constitutes or purports to be a cloud upon the title of appellant corporation, or the basis of a claim against it, the same should be cancelled; and the lower court erred in denying such relief. Lyne v. Bank of Kentucky, 5 J. J. Marsh, 560. See 10 Cyc., 1063.

3. Appellees also plead in bar of this action a judgment obtained by them in the Ohio Circuit Court, in an action wherein they were plaintiffs, and appellant company was defendant, which judgment was appealed to this court by appellant company, and the appeal dismissed by this court on motion of appellees. See 147 Ky., 50; 143 S. W., 772.

In that action, a demurrer was sustained to the answer of defendant, and defendant failing to plead further, judgment was rendered by default. However, that answer admitted that defendant was indebted to plaintiffs therein in the sum of four hundred dollars and the judgment was for five hundred dollars; and the appeal was dismissed by this court upon the ground that the amount in controversy was the difference between the amount admitted to be due, four hundred dollars, and the amount adjudged, five hundred dollars, and that this difference did not confer jurisdiction upon this court.

In the former opinion, which is the law of this case, the court said that the judgment below would not be conclusive of appellant company's right in an action brought to reform the contract; and this applies equally to an action brought by it to cancel that contract as a cloud upon its title. A reformation of the contract, as claimed

by appellant, Tucker, would have the same effect as the cancellation of the contract as to appellant company, that is, it would fix the royalty to be paid by said appellant company at two cents per ton.

There was no adjudication in that case of the merits of the controversy. The vital question, as between appellant company and appellees, is the fact of notice upon the part of appellant company, of this supplemental contract at the time of the assignment by Tucker to appellant company of the original Carter lease. Upon this fact depends the right of appellees to recover royalties from appellant company at the rate of two and one-half cents per ton; and likewise, upon the non-existence of this fact depends the right of appellant company to have the cancellation of said supplemental contract as a cloud upon its title; and this vital fact was not determined in the former action.

The judgment appealed from is therefore affirmed in so far as it denies reformation of said supplemental contract as between appellant, Tucker, and appellees; but reversed in so far as it denies cancellation of said supplemental contract as constituting or purporting to be a cloud upon the title of appellant company or the basis of claim against it by appellees; and the cause is remanded for proceedings in conformity to this opinion.