## Greenup v. United States Fidelity & Guaranty Company.

(Decided June 19, 1914.)

### Appeal from Hopkins Circuit Court.

Guardian and Ward—Recovery on Bond—Laches.—Where plaintiff upon becoming of age, released her guardian, who was her husband, under circumstances showing duress, and did not bring suit on the guardian's bond until 29 months after the settlement and 20 months after she was divorced from her husband, such delay was fatal to a recovery.

J. W. BOSTON, WILLIAM B. NOE for appellant.

GORDON & GORDON & COX for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Edna Ingram and George H. Greenup were married in Ohio County on January 5, 1906. On January 29, 1906, George H. Greenup qualified as the guardian of his wife, Edna Ingram Greenup, with his father, G. W. Greenup as his sole surety. On September 18, 1906, G. W. Greenup was released and discharged as surety. On the same day George H. Greenup executed a new bond with the United States Fidelity & Guaranty Company of Baltimore as his surety. On November 9, 1909, Edna Ingram Greenup became of age. On the same day she and her husband went to the office of J. W. Wilson, County Judge of Hopkins County, where George H. Greenup made a final settlement of his accounts as guardian.

At the time of the settlement, Mrs. Greenup signed the following:

"In the matter of George H. Greenup, guardian for Edna Ingram Greenup, his wife. The said ward, Edna Greenup, this day personally appeared before the judge of the Hopkins County Court and certified that she is now twenty-one years old and requests that a final settlement of the said guardian, which motion is sustained and settlement made in the presence of said ward, and we find that there was due ward the sum of $5,166.72, which amount was paid to the ward by note, and accepted by ward. This 9th day of November, 1909."

At the same time she executed the following receipt: "$5,166.72.

"This is to certify that I this day received one note from George H. Greenup for $5,166.72 dollars, balance due me, Edna Ingram Greenup, from George H. Greenup in his settlement as guardian.

"ᵁDNA INGRAM GREENUP."

The note mentioned in the receipt is as follows:

"J. W. Wilson,
        Judge of the Hopkins County Court.

"$5,166.72/100.          Madisonville, Ky., Nov. 9, 1909.

"One day after date I promise to pay to Edna Ingram Greenup five thousand one hundred and sixty-six and seventy-two hundredths dollars.

"GEO. H. GREENUP."

After making the settlement, but before it was recorded, the judge of the Hopkins County Court discovered that he made an error of $1,000 in calculating the balance due the ward. Thereupon he wrote the following note to the guardian advising him of this fact:

"Madisonville, Ky., Nov. 9, 1909.

"Mr. Geo. H. Greenup,
        "Dawson Springs, Ky.

"Dear Sir:

"I enclose you copy of settlement. Please note that we made a mistake in failing to carry one. The amount should have been $6,166.72 instead of $5,166.72, a mistake of $1,000.00. Please send me a receipt for that amount by return mail.

"Yours very truly,
        "J. W. WILSON."

Thereupon Mrs. Greenup executed and delivered to her guardian the following receipt:

"$1,000.00.

"Received from George H. Greenup, one thousand dollars, balance due me, Edna Ingram Greenup, by George H. Greenup, in final settlement as guardian, November 9, 1909.

"EDNA INGRAM GREENUP."

The foregoing settlement was left open for exceptions until January 3, 1910. No exceptions having been filed, the settlement was recorded, approved and confirmed.

Mr. and Mrs. Greenup continued to live together as husband and wife until August 10, 1910, when they separated. At that time they were in Shelby County, and Mrs. Greenup at once brought suit to obtain a divorce. Later this suit was dismissed, and on October 8, 1910, she brought suit in the McLean Circuit Court for alimony and divorce. On July 11, 1911, judgment was rendered in the latter action granting Mrs. Greenup a divorce from bed and board, and awarding her alimony in the sum of $25 a month, and also attorneys' fees in the sum of $200. On January 15, 1912, another order was entered in the same action adjudging Mrs. Greenup an absolute divorce from her husband. On April 10, 1912, Mrs. Greenup brought this suit against her husband, her former guardian, and the United States Fidelity & Guaranty Company as surety, to recover the sum of $6,166.72, the amount claimed to be due her in the settlement aforesaid. The guaranty company defended on the ground of laches. On final hearing the chancellor decreed that the guaranty company had been released by reason of the laches of the plaintiff. Judgment was entered accordingly, and plaintiff appeals.

This case, in its essential facts, is very similar to that of Aaron v. Mendel, 78 Ky., 427. In the latter case Z. T. Mendel was the guardian of his sister, Eva. Certain land belonging to Eva having been sold, Z. D. Mendel applied to the court to withdraw that part of the money belonging to Eva. Before doing so he was required to execute bond, which he did, with Rachel Mendel and Julius Mendel as his sureties. In October, 1874, Eva married Benjamin Aaron. He was then about 20 years of age. In September, 1878, she and her husband brought suit against her old guardian and the sureties, claiming that no part of the money received by the guardian had

been accounted for. Judgment went by default against Z. D. Mendel and Rachel Mendel. Julius Mendel defended on the ground that Eva, after she attained her majority, in consideration of a note for $2,000, executed by her mother, Rachel Mendel, released and acquitted her guardian, Z. D. Mendel, of all claim or demand against him as such. In discussing the question involved, the court said:

"Was the conduct of Aaron and wife such as good faith toward the surety demanded?

"As long as they failed to repudiate the settlement and release, the hands of the surety were tied. Their silence was equivalent to a declaration that they were satisfied, and the surety, knowing that the release had been executed, was lulled into supposed security. He neither knew the necessity for seeking indemnity nor had the legal right to demand it. He had no right to pay the debt, and assume himself the position of a creditor. Until they should elect to avoid the settlement and release there was no debt to pay, and this they might never do; and, having kept him so long in a position in which he was authorized by their conduct to believe he was finally discharged, and in which he was deprived by them of all right to seek indemnity, they were guilty of such bad faith toward him as ought, in equity and good conscience, to prevent them from now recovering.

"In Kirby v. Taylor (6 John's Chy., 348), Chancellor Kent held that a release of the principal by the ward, without the knowledge or consent of the surety, and acquiescence in the release for a period of twenty months, there being no pretense of fraud set up, was 'a complete exoneration of the surety. He had a perfect right to regard the discharge as valid, and it deprived him in the meantime of the opportunity of obtaining indemnity.'

"That there was fraud in this case and none in that can have no other effect than this: As long as the fraud was concealed the ward could take no step to avoid the release on that ground, and, consequently, non-action on his part would do no wrong to the surety; but when the fraud becomes fully known, and the ward is fully advised as to his rights, the fraud can no longer present an obstacle to his proceeding to avoid the release, and the consequences should be precisely the same as if the release had been procured without fraud.

"It is no answer to the argument drawn from the great delay to take steps to avoid the release to say that

the principal was insolvent; and no indemnity could have been procured by the surety if he had been immediately informed of the fraud and the election of the ward and her husband to avoid the release on that ground. It is impossible to say what might have been accomplished whether by legal proceedings or by personal persuasion, and, moreover, when the creditor has been guilty of bad faith toward the surety, which might have injured him, the court will not stop to inquire whether he has actually been injured or not.

"Nor does the fact that Mrs. Aaron was a married woman, and that the money was due in her right, affect the question.

"She was sole when the release was given, and she knew she had voluntarily signed it, and her subsequent marriage could not relieve her from the duty already imposed to repudiate it within a reasonable time."

In the present case plaintiff accepted her guardian's note in full satisfaction. She first signed the writing acknowledging receipt of the note as constituting the balance due her in the settlement. She subsequently signed a receipt acknowledging the payment of $1,000, balance due her by George H. Greenup in final settlement of his accounts as guardian. All this occurred on November 9, 1909. The settlement was approved January 3, 1910. Plaintiff insists that the settlement was obtained by fraud and duress. It may be doubted if there is any competent evidence of this fact. But assuming that there is, it further appears that plaintiff and her husband separated in August, 1910. Plaintiff immediately filed suit for divorce. From that time on she was no longer under the influence and control of her husband. If the acquittances were obtained by duress, she knew it at the time. She also knew it when she and her husband separated. Since the enactment of the Weissinger Act of 1894, a married woman may sue and recover of her husband any debt that he may owe her. Coleman v. Coleman, 142 Ky., 36. Plaintiff therefore had the right to sue. There can be no doubt that she knew that the note was worthless, and yet, with knowledge of this fact, and the further fact that it was obtained by duress, if it was so obtained, she delayed bringing suit for 29 months after the settlement was made, and for 20 months after she knew of the fraud and was no longer subject to the will of her husband. In the case of Kirby

v. Taylor, 6 Johns. Chy., 248, it was held under similar circumstances, in an opinion delivered by Chancellor Kent, that a delay of 20 months was fatal to a recovery. Here, with knowledge of all the facts, there was a delay of at least 20 months. Under the circumstances, we conclude that plaintiff, after acquiring knowledge of the fraud, and after being freed from the influence and control of her husband, failed to repudiate the settlement within a reasonable time, and that the surety is, therefore, released.

Judgment affirmed.