## J. T. and S. E. Carter v. Tucker.

(Decided October 24, 1924.)

### Appeal from Ohio Circuit Court.

1.  Partnership—Relation Between Members and Firm is that of Agent to Principal.—Relation between partners and firm is that of agent to principal, and firm property, legal title to which is held by partners, is in trust for firm.

2. Partnership—Member Acting with Knowledge and Acquiescence of other Members Not Liable to Them for Sale or Transfer of Property.—Each member of firm being agent thereof, he cannot be held liable to other members, individually or otherwise, for sale or transfer of firm property with their knowledge and acquiescence.

3. Estoppel—Partner Remaining Silent Through Transaction Cannot Retain Beneficial Result of Transaction and Renounce Balance.—Partner in possession of all facts, and who remains silent through a transaction, though present, cannot thereafter retain beneficial results of transaction and at same time renounce balance of transaction or contract which to him proves unsatisfactory.

4 Mines and Minerals—Partner Who was Lessor Permitting Another Partner to Transfer Lease to Corporation Cannot Recover from Other Partner Additional Royalty Required by Unrecorded Agreement.—Where lessor of coal lands became partner of lessee and permitted lessee to transfer lease to corporation formed by them without making known unrecorded supplemental agreement that transferee of lease would be required to pay additional royalty, he could not, on failure to recover additional royalty from corporation, recover it from lessee.

J. S. GLENN for appellants.

BARNES & SMITH for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE SAMPSON—Affirming.

This action was instituted by appellant, Carter, and wife, against appellee, Tucker, to recover of him a royalty of one-half (½c) cent per ton on 230,034 tons of coal mined from the Carter lands, in Ohio county, amounting in the aggregate to about $900.67, as charged in the petition. On the 28th of December, 1908, Carter and wife made a written lease to appellee, Tucker, whereby they let to him 300 acres of coal underlying the farm of Carter in Ohio county, to be mined on a royalty basis of two (2c) cents per ton, the provisions in the lease being:

> "That said Tucker, or his assigns, is to pay to the party of the first part, two (2) cents per ton for each ton of coal mined upon this property, which two (2) cents per ton is to be paid to the party of the first part in quarterly installments.
>
> "The said parties of the first part hereby agree to grant to the party of the second part the use of such surface land as may be necessary for the sinking of a shaft and the erection of tipple and plant

necessary for the operation of this mine, and grants unto him the use of the underground passages to be made in his said mines, for the purpose not only of drawing coal from under the land hereby leased, but for the purpose of drawing coal from under any other land or lands that said Turner may hereafter acquire.

"The first parties also give to said second party, a right of way, both to the river and to the railroad over said land, and it is further agreed that for the first two(2) years after the shaft is sunk, no minimum royalty shall be charged, but after the first two (2) years from the sinking of the shaft, then if the royalty of two (2) cents per ton does not equal two hundred dollars ($200.00), then said party of the second part must pay to said parties of the first part two hundred ($200.00) dollars as a minimum royalty per year, which is to be in payment for this lease for and during that year, and no credit is to be given upon the years thereafter for any excess paid in any one year in royalty more than coal mined.

"The duration of this lease shall be for a period of 50 years from date hereof, and upon the termination of same it shall be null and void.

"The party of the second part must begin the sinking of the shaft and equipment of this plant one year from this date, and should he fail to do so, then this lease is to be null and void."

On the same day the parties made a supplemental agreement reading as follows:

"Witnesseth, the said party of the second part does hereby agree that should he transfer the lease on three hundred acres of coal land located in Ohio county, Ky., to a third party, then the said first parties are to receive two and one-half cents per ton for all coal mined from the lease obtained this day from the said first parties."

This lease is set out in full in the opinion of Rockport Coal Company v. Carter, 157 Ky. 555, to which we refer.

On the same day appellee Tucker and appellant J. T. Carter and one M. W. Heltsley entered into a partnership for the purpose of taking and holding leases on coal property in that vicinity, including the one on the Carter

lands that day made. All leases were to be taken in the name of Tucker but for the use and benefit of the three, each owning one-third. The contract contains, among other things, this clause:

"The parties hereby authorize and empower said H. L. Tucker to secure said lease and obtain an execution thereof and ratify and confirm his acts in so doing, and so long as said leases or options are held in the name of said Tucker they are to be the property of this partnership and subject to their control and disposition as they may hereafter see fit."

This contract of partnership is copied in the opinion in the case of Carter, etc. v. Tucker, et al, 138 Ky. 34. Shortly after organizing the partnership and obtaining the leases, the partnership agreed to organize a corporation to which they would sell their leases, taking stock in the corporation therefor; and, accordingly, Tucker, acting for the partnership, organized a corporation capitalized at $50,000.00, to which that partnership conveyed all its leases, including the one on the Carter lands, receiving $9,000.00 of the capital stock for the leases. This stock was divided equally among the three partners. In addition to this, Tucker, who organized the corporation and solicited subscriptions to stock, was voted and received $6,000.00 in stock for his services.

Appellant Carter failed to have the amended lease contract which we have copied above recorded, and in transferring the lease to the corporation, Tucker, acting for the partnership, conveyed the lease as originally made by Carter and wife to Tucker, without the addition with respect to royalty. A controversy arose as a result of the failure of Carter to record his supplemental lease contract, and the failure of the partnership, through Tucker, to inform the corporation to which the Carter lease was transferred that by the supplemental contract the lessees were to pay two and one-half (2½c) cents per ton, instead of two (2) cents, for all coal mined, resulting in the suit styled "Carter, etc. v. Rockport Coal Company, et al.," which found its way to this court, the opinion being reported in 157 Ky. 555, to which we have made reference. In that case we held that the partnership which owned the leases and later sold and assigned them to the corporation was acting for the partnership, and although a shareholder, director and presi-

dent of the corporation, his interest was adverse to that of the corporation, and the corporation was not chargeable with his knowledge of an unrecorded contract by the terms of which he had agreed to pay an increased royalty on the lease executed by one of the partners to him, in the event he should assign the lease to a third party. We further held that appellee Tucker was not entitled to a reformation of the subsequent lease contract; but we did not hold that Tucker was liable to Carter or to any one for one-half (½c) cent per ton royalty on the coal mined, but merely held that the Rockport Coal Company was not liable for a greater royalty than two cents per ton on the coal taken from the Carter lease.

The answer, with exhibits in the case before us, is almost fifty (50) pages long and cannot conveniently be copied. It is divided into several paragraphs.

A demurrer was interposed to the second, third, fourth, fifth and sixth paragraphs, and a motion to strike the same paragraphs of the answer was also filed. Upon hearing the court overruled both the demurrer and the motion to strike. Thereupon the plaintiff declined to further plead, whereupon the court entered judgment dismissing appellant's petition and adjudging cost in favor of Tucker. It is from this judgment that Carter appeals.

A large part of the answer is made up of exhibits, chiefly copies of petitions and other pleadings in cases filed in the Ohio circuit court between the parties to this litigation and between them and the Rockport Coal Company. Some orders and judgments are copied and the contracts to which we have referred are also made exhibits. Besides traversing the material averments of the petition the answer affirmatively pleads that a part of the royalties sued for in this case had been collected by appellant Carter from the Rockport Coal Company. In another paragraph he pleads that the affairs of the partnership existing under the contract to which we have referred were settled shortly after the leases were conveyed to the corporation, and that all matters in which the partnership was concerned were then fully settled and all accounts between the partners were adjudged and determined. In another paragraph the defendant pleaded that he was the agent for the partnership in obtaining and holding the coal leases mentioned above and in transferring the leases to the corporation

organized as aforesaid, and that appellant Carter was one of the grantors in transferring the leases to the coal company, and that Carter in making such transfers acted through Tucker as agent; that Carter was present at the time the transfer was made and knew that the partnership was only transferring to the corporation the original coal lease made by Carter to Tucker for the use and benefit of the partnership, and that the royalty therein reserved was only two (2c) cents per ton, and that the supplemental lease contract was not embraced in the transfer from the partnership through Tucker to the corporation; and, further, that Carter acquiesced and consented to such transfer, and having done so is now estopped to claim one-half (½c) cent per ton royalty from Tucker on coal mined from his lease. We think the court properly overruled the demurrer to this paragraph of the answer. Tucker, as shown by the partnership contract, was the agent of the partnership in taking, holding and conveying the coal leases, and his transfer of the lease to the corporation was the transfer of the partnership, which included appellant Carter, and Heltsley and Tucker. Each and all the partners were concluded by that transfer as between themselves at least. It is a general rule recognized everywhere that the relation between the partners and the firm is that of agent to principal, and that the firm property, the legal title to which is held by the partners, is in trust for the firm. Each member of the firm is the agent thereof, and when he acts with the knowledge and acquiescence of the other members of the firm, cannot be held liable to them individually or otherwise for the sale or transfer of the firm property.

It is a well settled principle that a partner in possession of all the facts and who remains silent through a transaction, though present, cannot thereafter retain the beneficial results of the transaction and at the same time renounce the balance of the transaction or contract which to him proves unsatisfactory. 31 Cyc. 1267; Forsythe v. Bonta, 5 Bush 547.

The trial court did not err in overruling the demurrer and motion of appellant Carter to the answer of appellee Tucker, for the reason that Carter was not entitled in any event to recover of Tucker the one-half (½c) cent per ton royalty for which he sued.

Judgment affirmed.