## Fidelity & Casualty Company of New York v. Miller.

(Decided February 22, 1927.)

(Rehearing Denied, with Modification, June 14, 1927)

### Appeal from Muhlenberg Circuit Court.

1. Guardian and Ward.—Where second guardian receipted for check as cash from first guardian, which check was good at time, and caused county court orders to show that first guardian had settled accounts and been discharged, but failed to present check for more than two years, when first guardian had become insolvent,

first guardian's surety was released by acts and laches of second guardian.

2. Estoppel.—One who is guilty of neglect or delay which brings about loss to another will not be allowed to assert claim when he offers to do so, and thus put on an innocent party burden of paying debt of another.

WILKINS & SPARKS and FRED FORCHT for appellant.

T. O. JONES and BELCHER & BELCHER for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

An action for new trial was instituted by appellant, Fidelity & Casualty Company of New York, after the lower court had entered judgment sustaining a demurrer to its answer and it had declined to further plead and its petition had been dismissed. The second action met the same fate as the first, and these two appeals result.

On March 28, 1919, A. J. Browning was duly appointed guardian of Retha Whitmer, an infant under 14 years of age, and qualified by taking the oath and executing bond with the Fidelity & Casualty Company as surety, as required by law.

After the marriage of Retha Whitmer to John F. Miller, and at a time when she was more than 14 years of age, she appeared before the Muhlenberg county court and requested that her husband, John F. Miller, be appointed guardian for her, whereupon Browning was removed and Miller appointed in his stead. Browning made settlement of his accounts as guardian and filed the same with the county court, which ordered the report of settlement to lay over for exceptions, and at the next term of court, no exceptions having been filed, the report was confirmed; thereupon Browning, the ex-guardian, gave check to Miller, the new guardian, for approximately $2,500 representing funds in his hands as guardian belonging to Retha Miller, and Miller receipted Browning for the checks as cash. Miller cashed some of the checks but held another, amounting to $1,050, for something more than two years, without offering to cash it, and when it was presented to the bank Browning had become insolvent, and the check was returned indorsed "no funds." At the time the check was given Browning was solvent, and this condition continued for many months after the date of the check. At the time Brown-

ing gave Miller the checks Miller gave Browning a receipt reading:

"June 5, 1923.

"Received of A. J. Browning, guardian for Retha Whitmer, $2,528.54, balance due as shown by settlement filed in the Muhlenberg county court settling his accounts as such guardian. This item is made up as follows: Check for $1,528.54, $500 paid by check at a former date, and $500 paid to C. P. Hudson, payment on trade of land. John F. Miller, for Retha Whitmer Miller."

At the end of the first year after Miller's appointment as guardian, he made settlement with the county court, as follows:

To cash received of A. J. Browning, former
    guardian for said Retha Whitmer Miller $2,528.54
To interest on said amount for one year............ 125.54

After Browning had become insolvent and the bank refused to pay the check of $1,050, held by Miller as guardian, this action was instituted in the Muhlenberg circuit court by Retha Miller, by her guardian, against Fidelity & Casualty Company of New York, surety upon Browning's bond as guardian, to recover the amount of the check, $1,050, with interest. The casualty company as surety filed separate answer in which it recited all the facts concerning the appointment of Browning as guardian and its suretyship upon his bond, the final settlement of the accounts of Browning as guardian, and his discharge after settlement of his accounts, and the appointment of Miller as his successor, making copies of all the orders of the county court part thereof, and prayed that the petition be dismissed for the reason that the casualty company had long since been released and discharged from liability on account of the bond, and because the infant ward and her new guardian had been guilty of laches in failing to sooner attempt to cash the check, and upon failure of bank to pay it to institute the suit. Appellee filed general demurrer to the second paragraph of the answer setting up these defenses, and its demurrer was, upon hearing, sustained by the court. Although leave was given to amend the answer, appellant declined to further plead, and the cause was submitted.

The court entered judgment granting the prayer of the petition and adjudging the infant and her guardian entitled to recover $1,050, with interest, of appellant casualty company.

On this appeal appellant Casualty Company earnestly insists that the surety of the first guardian was released by reason of the affirmative acts and laches of the second guardian, and cites and relies upon the rule laid down and applied in the case of Greenup v. United States Fidelity & Guaranty Co., 159 Ky. 647, 167 S. W. 910, and other similar cases. The Greenup Case upon its facts is very similar to the one now before us. In that case the guardian defended on the ground of laches, and it was held that the surety was released and that judgment was affirmed by this court. The opinion in that case was rested upon Aaron v. Mendel, 78 Ky. 427, 39 Am, Rep. 248, where, among other things, we said:

"As long as they failed to repudiate the settlement and release, the hands of the surety were tied. Their silence was equivalent to a declaration that they were satisfied, and the surety, knowing that the release had been executed, was lulled into supposed security. He neither knew the necessity for seeking indemnity nor had the legal right to demand it. He had no right to pay the debt, and assume himself the position of a creditor. Until they should elect to avoid the settlement and release there was no debt to pay, and this they might never do; and, having kept him so long in a position in which he was authorized by their conduct to believe he was finally discharged, and in which he was deprived by them of all right to seek indemnity, they were guilty of such bad faith toward him as ought, in equity and good conscience, to prevent them from now recovering. . . .

"It is no answer to the argument drawn from the great delay to take steps to avoid the release to say that the principal was insolvent; and no indemnity could have been procured by the surety if he had been immediately informed of the fraud and the election of the ward and her husband to avoid the release on that ground. It is impossible to say what might have been accomplished either by legal proceedings or by personal persuasion, and moreover, when the creditor has been guilty of bad faith toward the surety, which might have injured him, the

court will not stop to inquire whether he has actually been injured or not.''

In the Greenup case, speaking of the guardian, we said:

''She first signed the writing acknowledging receipt of the note as constituting the balance due her in the settlement. She subsequently signed a receipt acknowledging the payment of $1,000, balance due her by George H. Greenup in final settlement of his accounts as guardian. All this occurred on November 9, 1909. The settlement was approved January 3, 1910. Plaintiff insists that the settlement was obtained by fraud and duress. It may be doubted if there is any competent evidence of this fact. But assuming that there is, it further appears that plaintiff and her husband separated in August, 1910. Plaintiff immediately filed suit for divorce. From that time on she was no longer under the influence and control of her husband. If the acquittances were obtained by duress, she knew it at the time. She also knew it when she and her husband separated. Since the enactment of Weissinger Act of 1894 (Laws 1894, c. 76), a married woman may sue and recover of her husband any debt that he may owe her. Coleman v. Coleman, 142 Ky. 36, 133 S. W. 1003. Plaintiff therefore had the right to sue. There can be no doubt that she knew that the note was worthless, and yet, with knowledge of this fact, and the further fact that it was obtained by duress, if it was so obtained, she delayed bringing suit for 29 months after the settlement was made, and for 20 months after she knew of the fraud and was no longer subject to the will of her husband. In the case of Kirby v. Taylor, 6 Johns, Chy. (N. Y.) 248, it was held under similar circumstances, in an opinion delivered by Chancellor Kent, that a delay of 20 months was fatal to a recovery. Here, with knowledge of all the facts, there was a delay of at least 20 months. Under the circumstances, we conclude that plaintiff, after acquiring knowledge of the fraud, and after being freed from the influence and control of her husband, failed to repudiate the settlement within a reasonable time, and that the surety is, therefore, released.''

The only difference between the Greenup case and this case upon the facts is the difference between the note

given in the Greenup case and the check given in the present case. The note was good at the time it was given and so treated. Browning was good at the time he gave it and for some months thereafter. They were both treated as cash by the new guardian. He receipted for them as if they were cash and caused the orders of the county court to show that the old guardian had settled his accounts and had been discharged. This of course, released the surety. The record remained in this condition for months afterwards, leading the surety to believe that the old guardian had paid up in full. This deprived the surety of an opportunity to protect itself against loss by proceeding against the principal either by action at law or by other means to secure itself. In those cases cited where the time which elapsed was not so great as in this case, the court held that the surety was released because of laches of the new guardian and his ward. The rule there recognized must be applied to the facts of this case and the surety released. Any other rule would take from the surety, who it is supposed is the favorite of the law, every chance to protect itself against loss on account of defalcation of its principal, and would allow a succeeding guardian and his ward to neglect the enforcement of claims against the old guardian and thus later put the surety at great disadvantage and inflict upon it loss unnecessarily. Equity never allows this, for he who is guilty of neglect or delay which bring about loss to another will not be allowed to assert his claim when he offers to do so, and thus put on an innocent party the burden of paying the debt of another. If the allegations in the second paragraph of the answer are true, they constitute a good defense. There was no basis for the suit for a new trial instituted by appellant, and the lower court properly sustained the demurrer to the petition.

The judgment in the cause wherein judgment was entered against appellant for $1,050, with interest, is reversed, and cause remanded for proceedings consistent with this opinion. The judgment in the other case, wherein appellant sought a new trial, is affirmed.