**Amos GRAHAM et al., Appellants,**

v.

**Paul MALONEY, Appellee.**

Court of Appeals of Kentucky.

Dec. 13, 1957.

J. Douglas Graham, Campton, for appellants.

Ollie J. Cockrell, Jackson, for appellee.

MONTGOMERY, Judge.

Amos Graham and E. B. Noble appeal from an adverse judgment in the sum of $5,175, with interest from April 15, 1948. The judgment resulted from the filing of an action by Paul Maloney, appellee, against his father, G. G. Maloney, his guardian, and the sureties on two guardian bonds, his brother, Eugene Maloney, and the two appellants. Default judgment was taken against the father and brother. They have not appealed.

In 1936, G. G. Maloney conveyed to his two infant sons, Paul and Eugene, without monetary consideration, an undivided one-half interest in certain real estate in Jackson, Kentucky. In 1946, this property was sold at auction in an action filed under Civil Code of Practice Sections 489 and 490, now KRS 389.010 and 389.020, respectively, authorizing the sale of an undivided interest in land owned by an infant. By order of

court, the father was permitted to bid in the property and take title in himself with a lien retained to secure the purchase price due appellee. Amos Graham, as surety, signed the father's original bond, required under the Code. The property was resold by the father in 1948. In order to secure a release of the lien, additional security was provided by the execution of a second bond, with the father as principal and the brother and E. B. Noble, appellant, as sureties.

Appellee became 21 years of age on January 8, 1950. This action was filed on June 8, 1954. At the time of the execution of the bonds, G. G. Maloney appears to have owned land in three counties and to have had some wealth. At the time of this action, the father had become insolvent and claimed residence in Virginia. The record shows that he had become senile and had received treatment in a mental institution. He was 78 years of age at the time his deposition was taken. Eugene Maloney, the brother, was a resident of Ohio. No settlement as guardian was ever made and, apparently, no demand was made by appellee upon his father for settlement. No demands were made upon appellants as sureties until shortly before the filing of this action, or almost four and one-half years after appellee became 21 years of age.

The evidence shows that gifts in the form of money and land were given by the father to appellee at various times. In 1952, the father conveyed to appellee certain farm land which was sold shortly thereafter for $4,000. Appellee paid nothing for this land. In 1954, certain other land in which the father owned an equitable interest was conveyed to appellee. Nothing was paid for this conveyance by appellee. His father paid his expenses and gave him $300 to make a trip to obtain the title from some people in California. The land was subsequently sold for $6,000, of which $5,500 was turned over by appellee to his father. Appellee explained that "He * * * then give me five hundred dollars to sign the deed". Appellee was shown to have had knowledge of his father's business transactions which culminated in his insolvency prior to the filing of this action.

Several grounds for reversal are urged but it is necessary to consider only one. Appellants contend that appellee negligently delayed making any demand against the appellants, as sureties, on the guardian bond until his father, as guardian, had become insolvent, thus throwing the burden of paying on innocent parties.

■ The record shows that the appellee, with knowledge of his claim, stood by without taking any action while his father's financial condition changed from solvency to insolvency. This was done at a time when appellee had knowledge of his father's business affairs and knew that no settlement as guardian had been filed as required. By the real estate transactions in 1952 and 1954, appellee received title to lands of his father which were sold for $10,000. He could and should have collected or withheld any claim he had against his father, as guardian, from these funds. It would be manifestly unfair to permit appellee to recover now against the sureties when he had within his hands the funds of his father out of which he could have collected the claim he now asserts. Appellee was guilty of neglect by his failure to protect himself and thereby save the appellants, as sureties, from having to pay an unjust debt. By delay the sureties were prevented from protecting themselves against loss while the guardian was still solvent. Such delay under the circumstances is inexcusable and amounts to bad faith.

■ Good faith and fair dealing are required of the ward as well as of the guardian in order to hold the guardian or the surety liable. There is a duty owed by the ward to the surety to make known his demand within a reasonable time. Hardin's Adm'r v. Taylor, 78 Ky. 593, 1 Ky. Law Rep. 322. Where one seeking to enforce an obligation has by his conduct and unreasonable delay brought about an un-

due hardship which by his diligence could have been avoided, relief will be denied. Heydinger v. City of Catlettsburg, D.C., 114 F.Supp. 294. The rule is stated in Fidelity & Casualty Co. of New York v. Miller, 220 Ky. 123, 294 S.W. 1093, as:

" * * * [he] who is guilty of neglect or delay which bring about loss to another will not be allowed to assert [his] claim when he offers to do so, and thus put on an innocent party the burden of paying [the] debt of another."

The opinion in the Miller case was based on the earlier cases of Aaron v. Mendel, 78 Ky. 427, 39 Am.Rep. 248; Greenup v. United States Fidelity & Guaranty Co., 159 Ky. 647, 167 S.W. 910. See also Carter v. Tucker, 205. Ky. 438, 266 S.W. 9, wherein the rule is applied to a partnership relation.

The judgment is reversed with directions to enter one in favor of the appellants.