### BUCHANAN *v.* HICKS.

#### Opinion delivered March 20, 1911.

1. RECEIVER—INSOLVENT CORPORATION—POWERS.—Upon the appointment and qualification of a receiver of an insolvent corporation he became invested with the title to all of the personal property and choses in action thereof, and was entitled to receive payment of all debts due to it; and thereafter its officers and agents are without authority to meddle with the property of such corporation or to collect indebtedness due to it, and a payment to them will constitute no defense in a suit by the receiver. (Page 374.)

2. SAME—APPOINTMENT AS NOTICE.—The appointment of a receiver of the property of an insolvent corporation is legal notice to all persons having contractual relations with such corporations. (Page 376.)

3. SAME—CONTRACT FOR MANAGEMENT OF ESTATE.—An agreement by a receiver appointed by the court to turn over to another the control and management of the property and business intrusted to his charge is void. (Page 377.)

4. SAME—SITUS OF DEBT.—Where a debtor in another State owed an insolvent corporation of this State, the situs of the debt follows the

domicil of the corporation, and the right to collect same is invested in a receiver appointed in this State. (Page 378.)

5. CIRCUIT COURT—ACCOUNT—JURISDICTION.—The circuit court has jurisdiction over an action upon an account where the total amount of the account is within that court's jurisdiction. (Page 379.)

6. APPEAL AND ERROR—REHEARING—DIVIDED COURT.—Where, on a rehearing, the four judges who participate in the decision are equally divided, the petition for rehearing will be overruled without an opinion of the court. (Page 379.)

Appeal from Miller Circuit Court; *Jacob M. Carter,* Judge; affirmed.

*Henry Moore & Henry Moore, Jr.,* for appellant.

1. The court erred in overruling the demurrer to the second count of the complaint. The circuit court was without jurisdiction. Art. 7, § 40, Const. 1874; 1 Ark. 252; *Id.* 275; 2 Ark. 449; 3 Ark. 494; 5 Ark. 34; 9 Ark. 465; 18 Ark. 249; 34 Ark. 188; 35 Ark. 287; 55 Ark. 143; 72 Ark. 334; 74 Ark. 615; 78 Ark. 595; 85 Ark. 213; 89 Ark. 435.

2. The court should have instructed the jury that a receiver as such has no extraterritorial jurisdiction; that is, being a mere creature of the court, he can have no wider or greater jurisdiction than the power which created him. 23 Am. & Eng. Enc. of L. (2 ed.) 1107. See also 3 *Id.* 1109.

3. The court erred in instructing a verdict in favor of the plaintiff. Where there is any evidence tending to establish an issue in favor of the party against whom the verdict is directed, it is error to take the case from the jury. 89 Ark. 368, 372 and cases cited.

*W. H. Arnold,* for appellee.

FRAUENTHAL, J. This was an action instituted by John T. Hicks as the receiver of an insolvent corporation to recover from the defendant upon an account which he claimed to be due to said corporation. The complaint contained two paragraphs. In the first paragraph it was alleged that the defendant was indebted for two carloads of lumber in the sum of $637; and in the second paragraph it was alleged that he was indebted in the sum of $32.70 for a balance due for wares and merchandise sold to him; and recovery was sought for both of said amounts.

The defendants filed a demurrer to the second paragraph of

the complaint on the ground that the amount therein sued for was below the jurisdictional limit of the circuit court. The court overruled said demurrer, and the defendant thereupon filed an answer in which he admitted the shipment of the two carloads of lumber, but denied that he owed plaintiff as receiver therefor, and alleged that he had made payment thereof to the proper person entitled to receive same. He did not deny owing for the balance of account set forth in the second paragraph of the complaint. Upon the trial of the case the court directed the jury to find in favor of the plaintiff for the amount sued for, which was done. From this action defendant has appealed to this court.

It appears that the Camden Lumber Company was a corporation duly organized under the laws of the State of Arkansas, and was located in the county of Ouachita, with its place of business at a postoffice in said county called "Lumber," at which it operated a sawmill plant. On October 3, 1905, said corporation having become insolvent, J. T. Hicks was regularly appointed receiver thereof by the United States Circuit Court for the Western District of Arkansas, and duly qualified as such receiver on October 5, 1905. No question was made in the lower court, and none is made in this court, relative to the regularity of the institution of said suit and the legality of the appointment of said Hicks as receiver of said corporation by said court. The sole defense that was made in the lower court, and which is pressed here, against the recovery for said two carloads of lumber, is that the defendant claims that he bought the same from said corporation prior to the appointment of said receiver, and that he thereafter paid therefor to the manager of said corporation, who was authorized to receive the same.

Inasmuch as the lower court directed a verdict against defendant, if there was any testimony adduced upon the trial of this case which tended to establish an issue constituting a legal defense to a recovery for this lumber, then the lower court erred in giving said peremptory charge for a verdict in favor of plaintiff. We think, however, that the testimony adduced at the trial of this case is virtually undisputed. According to this uncontroverted testimony, the case is this:

The Camden Lumber Company had been engaged in the manufacture of lumber for quite a period prior to October, 1905,

in Ouachita County, Arkansas, and J. J. Cochran was the vice president and manager thereof, with a sales office located at St. Louis, Mo. The defendant, through said Cochran, had purchased from said corporation a number of cars of lumber during the year 1905, and in August of that year made an order for the two cars involved in this suit, one of which he directed to be shipped to his customer at Warsaw, Mo., and the other to be shipped to another customer at Colorado Springs, Colorado.

On the 2d or 4th of October, 1905, and prior to the qualification of said receiver, invoices for said lumber were sent to the office of the defendant at Kansas City, Mo. According to the terms of the invoices, the defendant was entitled to a discount on the price of the lumber of two per cent. by paying for same within a certain time after receipt of said invoice; and on October 17, pursuant to the terms of said invoices and according to his prior custom in his dealings with this corporation, he executed a check payable to the corporation for $637, same being the price of the lumber less the discount of two per cent., and sent the same to its office at St. Louis, Mo. This check was drawn upon a bank located at Kansas City, Mo., and was paid by said bank on October 30, 1905. In the meanwhile, the receiver, on October 7, 1905, proceeded to the place of business and plant of said insolvent corporation in Ouachita County, and took possession of all the assets thereof at that place. Amongst these were the two carloads of lumber involved in this suit, which were on the cars but which had not then been delivered to a common carrier for shipment. The receiver also took possession of all the books and accounts of said corporation, and therefrom found that these two cars had been ordered prior to his appointment, and had been directed to be shipped to the two customers of defendant above named. In order to carry out the contract for the sale of these two cars of lumber, he then obtained bills of lading from the common carrier at that place, consigning the same to said two customers, and on October 14 he attached same to drafts drawn on said customers for the price of the lumber, and on October 17 wrote to each of these customers, stating that he had drawn upon them for the price of the lumber through the bank with the bills of lading attached, and requesting that they honor the same upon presentation thereof. The customers, upon receipt of said

letters, immediately wrote to the defendant at his office at Kansas
City, notifying him of the receipt of these letters from the re-
ceiver, which were received by the defendant on October 22. On
October 23 defendant wrote to said receiver, stating that he had
purchased the lumber, directing it sent to his customers, and
that, in accordance with his custom, he had sent a draft in pay-
ment therefor to the office of the corporation at St. Louis, Mo.,
and therein requested the receiver to recall the drafts upon his
customers. Further correspondence was exchanged between the
receiver and the defendant, in which the receiver insisted upon
payment being made to him, and defendant contended that he
had rightfully sent payment to the corporation at St. Louis.

In the meanwhile said draft was received by said Cochran
at St. Louis some time after October 17th, and he indorsed the
corporation's name thereon and also his own name, and placed
same for collection in a bank in St. Louis with direction to place
the amount to his individual credit when collected. The draft
was paid on October 30th, and said Cochran testified that he
thereafter paid the proceds thereof to creditors of the corpora-
tion in Missouri.

Subsequently, the receiver made report of his actions rela-
tive to carrying out the contract of the corporation for the sale
of this lumber and as to the claims of the defendant with refer-
ence to the payment therefor, and he was directed by the court
to institute this suit against the defendant.

It thus appears that the defendant made a contract for the
purchase of this lumber from the corporation prior to the time
the receiver was appointed therefor, and sent a check in payment
for the lumber some time after the receiver had been appointed
and qualified, and prior to the time that the lumber had been
delivered to a common carrier for shipment. The question there-
fore involved in this case is whether or not defendant had a right
to make payment for this lumber to any one except the receiver.
The plaintiff was appointed receiver of this insolvent corpora-
tion is a suit regularly pending in a court having jurisdiction
thereof, and no question is made contesting the regularity of that
appointment. The appointment of the receiver was a matter
resting entirely within the discretion of the court which appointed
him, and he thereby became the representative of all persons who

were concerned in the corporation. Upon his appointment by the court, the receiver became entitled to the possession of all property and assets belonging to said insolvent corporation for the benefit of the parties to that suit and all concerned, and his possession could not be disturbed by any one without leave of that court. The receiver was but an arm of the court, and all the property of the corporation within the jurisdiction of that court by virtue of his appointment was placed within the custody of the court through him as such receiver. The title to all the property of the insolvent corporation within the jurisdiction of the court became immediately vested in said receiver upon his appointment and qualification. This included not only all the personal property of said corporation but all its accounts and choses in action.

In speaking of the nature and extent of the title of a receiver to the property of an insolvent corporation, Mr. High in his work on Receivers, says that he is vested by law with the title to the estate of the corporation, deriving his title thereto under and through it. (High on Receivers, § 315.) In section 316 he says further: "As regards the rights of action vested in a receiver of a corporation by virtue of his appointment, the general rule is that he takes all rights of action which the corporation itself originally had, and may enforce them by the same legal remedies."

The receiver, as an officer of the court which has taken control of the property of an insolvent corporation, is, for the purpose of the administration of the assets thereof, invested with the title to its property, and is the real party in interest in any litigation concerning it. *Henning* v. *Raymond,* 35 Minn. 303; Re *Schuyler's Steam Tow Boat Co.,* 136 N. Y. 169; In re *Tyler,* 149 U. S. 164; 23 Am. & Eng. Enc. Law, 1087.

It is provided by the statutes of this State that when a receiver shall be appointed for a corporation he shall thenceforward have full possession of and shall be vested with the title to all its personal property, including money, credits, choses in action, and rights and interests of every kind, so as to preserve the assets and property for the benefit of the corporation and all persons interested. Kirby's Digest, § 6348.

Immediately, therefore, upon the appointment and qualifi-

cation of the plaintiff as receiver of the said insolvent corporation, he became invested with the title to all the personal property and choses in action thereof, and was the party who was entitled to receive payments of all debts due to it. *Driver* v. *Lanier,* 66 Ark. 126; *Ratcliff* v. *Adler,* 71 Ark. 269; High on Receivers, § 316.

Upon the appointment of the receiver for said insolvent corporation its corporate functions were suspended, and it could exercise no further authority over its property or effects. As is said in High on Receivers, section 290: "The appointment of a receiver over a corporation is generally equivalent to a suspension of its corporate functions and of all authority over its property and effects, and is also equivalent to an injunction restraining its officers and agents from intermeddling with its property."

So that, after the appointment of a receiver, the corporate officers and agents are without authority to meddle with the property of said corporation, and have no right or authority to collect any indebtedness that may be due to it. In effect, the receiver succeeds to all of the rights of the corporation and the authority to control its property and collect its assets, including all debts that may be due to it, and this authority can only be exercised by him or by some one appointed by him. *Linville* v. *Hadden* (Ind.), 43 L. R. A. *222*; *Squire* v. *Princeton Lighting Co.* (N. J.), 68 Atl. 176; 34 Cyc. 182.

Now, in the case at bar the undisputed testimony shows that on October 5, 1905, the plaintiff was appointed and duly qualified as receiver of said insolvent corporation, and on October 7 he actually took possession of the two cars of lumber involved in this case. Prior to that time the defendant had made an order for this lumber, and the receiver thereupon, in carrying out the agreement of the corporation to sell him the same, shipped the two cars to defendant's customers, and defendant received from such customers payment therefor. Whether we shall consider that the title to the two cars of lumber became invested in the receiver upon his appointment and taking possession thereof, and therefore the defendant became indebted to plaintiff as receiver by reason of the same having been shipped thereafter to parties for his benefit, or whether we shall consider the defendant had purchased the lumber from the corporation prior to the appoint-

ment of the receiver, and simply owed to the corporation the debt therefor upon his appointment, in either event the title to the lumber or the title to the debt became invested in the receiver on October 5, when he was duly qualified. After the 5th of October the corporation itself could exercise no authority over its assets, and its former vice president and manager could not exercise such authority. Both the powers of the corporation and of its former officers and agents became suspended immediately upon the qualification of said receiver. After that the only party who had a right to receive payment for any property belonging to the corporation, or for any indebtedness due to it, was the receiver. Therefore, when the defendant sent payment for said lumber to the corporation or to Cochran, its former manager, on October 17, 1905, he made the payment to one who was not authorized to receive the same, and therefore such alleged payment would not extinguish the debt. *Jenkins* v. *Shinn,* 55 Ark. 347; *Bank of Batesville* v. *Maxey,* 76 Ark. 472; 30 Cyc. 1183.

But it is urged by the defendant that at the time he sent the draft to the corporation at St. Louis, or to its manager, he did not know and had received no notice of the appointment of a receiver for said insolvent corporation, and that under such circumstances the payment made by him to the corporation or its former manager would be effective. But, as is said in the case of *Breed* v. *Glasgow Inv. Co.,* 92 Fed. 760: "The appointment of a receiver of the property of an insolvent corporation is legal notice to all persons having contractual relations with it. Their rights are not affected by the notice or the want of it, but by the operation of the law which the court has put in motion." The contention, therefore, made by the defendant that he had no notice of the appointment of the receiver, and therefore was not bound by the order appointing the receiver for this insolvent corporation, is without merit." 34 Cyc. 216.

It is further contended that, prior to the appointment of the plaintiff as receiver, he had some arrangement with said Cochran, the former vice president and manager of the corporation, whereby it was agreed that after he was appointed the said Cochran should control and manage certain of its properties and business. But such an agreement, if made, could not be valid. The receiver is an officer of the court, and he cannot, by any

agreement, tie himself up in the performance of his official duties. An agreement, therefore, even if made by him, to turn over to another the control and management of the business and property of the corporation, which by the court is entrusted to his care and management, is void. *Shadewald* v. *White*, 74 Minn. 208.

It is also contended by defendant that the indebtedness that was due to this corporation was an asset situated in the State of Missouri, and therefore outside of the jurisdiction of the court which appointed the receiver over this insolvent corporation in the State of Arkansas. It is therefore insisted that, by virtue of his appointment, the receiver was not entitled to the possession of this indebtedness, and the title thereto was not vested in him. But we do not think this contention is correct. The *situs* of a debt follows the creditor, and the creditor in this case was a corporation. The place of business and domicil of this corporation was in Ouachita County, Arkansas, and the *situs* of this debt was therefore at that place. The debt was therefore an asset of the corporation over which the court in Arkansas, which appointed the plaintiff as its receiver, had full jurisdiction, and the title thereto and the right to collect the same was thereby invested in the plaintiff. *Smead* v. *Chandler*, 71 Ark. 505; 9 Cyc. 681.

It follows from the foregoing that the plaintiff as the receiver of said insolvent corporation was the only person who was entitled to collect from the defendant the amount due for these two cars of lumber, and that the payment, or attempted payment, made to the corporation or its manager after the appointment of said receiver, was ineffective. In addition to this, defendant had received notice of the appointment of a receiver, and of his contention that he was entitled to receive payment for this lumber, on October 22, 1905, at his office at Kansas City, and long prior to the time when the draft which he had given to the corporation was actually paid. He therefore had ample time to have stopped the payment of said draft after he had received such notice, and before its payment, which he failed to do.

We are of the opinion, therefore, that the plaintiff was entitled to recover from the defendant the amount of said two cars of lumber. We do not think that there is any merit in the contention of the defendant that the circuit court did not have jurisdiction over the items of the account set out in the second para-

graph of the complaint.   We think that the items of lumber set out in the first paragraph were but parts of an account due by the defendant to the corporation, and that the items set out in the second paragraph were but other items of the same account, and that therefore the items set out in both paragraphs constituted parts of one running account, and were not claims founded upon separate and distinct contracts.   The entire items set out in both paragraphs could have been, and probably should have been, set forth in only one paragraph.

The circuit court therefore had jurisdiction over the entire account, which included all of the items of both paragraphs of this complaint.

Under the undisputed testimony, which was adduced upon the trial of this case, we are of the opinion that the plaintiff was entitled to recover the amount sued for, and the court therefore did not err in directing a verdict for said amount in favor of the plaintiff.

The judgment is affirmed.

HART, J., dissents; KIRBY, J., disqualified.

## ON REHEARING.

### Opinion delivered April 10, 1911.

PER CURIAM.   On the question of jurisdiction of the circuit court as to the item of $32.70 set forth in the last paragraph of the complaint, the four judges who participated in the decision (one of the judges being disqualified) are equally divided in opinion, therefore the petition for reconsideration will stand over-ruled without an opinion of the court on that question.