## Columbus Mining Company v. Combs et al.

(Decided March 18, 1930.)

J. W. CRAFT for appellant.

WOOTTON & WOOTON and W. A. STANFILL for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

In this action by John W. Combs against the Columbus Mining Company to recover royalties, the court awarded him $5,099, but adjudged that one twenty-eighth of that amount should go to Jessie Cornett. The Columbus Mining Company appeals.

Briefly stated, the facts are these: On September 27, 1912, Henry Cornett, who owned about 62 acres of coal land near the north fork of the Kentucky river, in Perry county, executed a coal lease thereon to W. M. and S. A. D. Jones, providing for a royalty of 10 cents a ton and a minimum royalty of $250 a year. This lease was afterwards acquired by the Columbus Mining Company. On December 11, 1912, Henry Cornett and wife conveyed to Whit Cornett and Mary Combs, his son and daughter, 40 acres of the 62-acre tract, together with other rights, which will be noticed hereafter. On December 16, 1912, Whit Cornett and wife conveyed one-half of their undivided one-half interest in the 40 acres conveyed to them by Henry Cornett to French Combs, the husband of Mary Combs, thus passing to French Combs a one-fourth interest in the whole tract. In November, 1913, Whit Cornett and wife and French Combs and wife conveyed to W. M. and S. A. D. Jones one-half the coal and other minerals in the 40-acre tract conveyed to them by Henry Cornett. This deed was made subject

to the coal lease on the 40 acres, and contained a provision to the effect that French Combs only conveyed the surface in the part which he owned, but the mining rights went to second parties. The Joneses conveyed the interest thus acquired, as well as the lease which they held, to the Raccoon Coal Company, and the Raccoon Coal Company conveyed to appellant, Columbus Mining Company.

On May 5, 1919, Henry Cornett died, leaving a will by which he devised all of his real estate to his daughters Nancy Jane Smith, Orlena Cornett, and Martha Cornett, and to the children of his son Russell Cornett, in equal parts. Though contested, the will was probated and sustained, and the attorneys for the contestees were awarded a lien on the land for their fee.

In the early part of 1927, John W. Combs purchased not only from the devisees of Henry Cornett, with the exception of Jessie Cornett, but from his heirs, all their interest in and claim to his landed estate, including the 22 acres in controversy. It is true that certain grantors appeared in this action and made the claim that the provision by which they conveyed their right to royalties was inserted in the deed by fraud or mutual mistake, and that it was not agreed between them and Combs to convey the royalties, but the evidence on the question fell far short of being clear and convincing, and the claim was properly rejected by the court.

Appellant first insists that John W. Combs was without right to maintain the action. The basis of this claim is that royalties cannot be assigned so as to vest the right of action in the assignee, and the action was not brought in the name of the assignors. In this connection it is pointed out that, while certain devisees under the will of Henry Cornett filed disclaimers, other devisees, instead of joining with John W. Combs as plaintiffs, filed their joint and several answers attacking the conveyances to John W. Combs and asserting their right to the royalties. In the circumstances we need not determine whether or not past due royalties may be assigned so as to vest the right of action in the assignee alone. It is sufficient to say that, even in those cases where the assignment is not authorized by statute, the Code does not require that the assignor be made a party plaintiff. It is sufficient if he be made or becomes a party to the action so that his rights, as well as the rights

of the assignee, and the person owing the claim, may be adjudicated. Civil Code of Practice, sec. 19; Pond Creek Coal Co. v. Riley Lester & Bros., 171 Ky. 811, 188 S. W. 907. Here the grantors or assignors having an interest in the royalties were all made parties and their rights determined. It follows that there is no merit in the contention that the action could not be maintained by John W. Combs because the assignors were not parties plaintiff.

Equally without merit is the contention that the transaction between John W. Combs and the devisees and heirs of Henry Cornett was champertous. All that the evidence shows is that John W. Combs took some interest in the will contest, and that, after the will was sustained, he purchased the interests of the devisees and heirs for a cash consideration, and agreed to pay the fee of contestees' attorneys, which had been adjudged a lien on the land. There was no showing whatever that the conveyances were made in consideration of services to be rendered by him in aiding in the prosecution or defense of the contest suit, or that it was agreed that any part of the property involved was to be taken, paid, or received by him for such services.

Another insistence is that on Henry Cornett's death all his claim to royalties in the entire 62-acre tract of land passed to his son Whit Cornett and his daughter Mary Combs, by virtue of the deed of September 27, 1912, and, that being true, John W. Combs acquired nothing by virtue of the conveyances which he took from Henry Cornett's devisees and heirs. This contention is based on the following provision of the deed: "First party is to have control of said land during his natural life. Second party is to have the benefit of two-thirds of the amount of the coal liece that is mined during first partys' life time at the death of said first party all the coal leace goes to second parties."

The argument is that the words "all the coal leace goes to second parties" include not only the lease on the 40 acres, but the lease on the entire 62 acres. It must not be overlooked that the foregoing provision follows immediately after the description of the land conveyed, and that the land is described as "containing 40 acres more or less," and, had there been nothing after the description, all the coal lease, or, more accurately speaking, the royalties payable thereunder, would have passed

as an incident of the land to the grantees. However, this was not the intention of the grantor. His purpose was to retain control of the land during his lifetime, and to reserve one-third of the royalties, and not to have all the royalties pass to his grantees until after his death. He was not speaking of any other land, and it was not necessary to reserve any rights in any other land. On the contrary, the land of which he was to have control during his natural life was "said land;" that is, the land just described. In the same connection he provided that second party was to have the benefit of two-thirds of the amount of the coal lease mined during his lifetime, and at his death all the coal lease should go to second parties. In using this language he was not referring to any other land, but was still speaking of, and dealing with, "said land." In other words, he meant that the grantees should have two-thirds of the coal lease on the 40-acre tract during his lifetime, and that at his death all the coal lease on that tract should pass to them. It follows that neither the 22-acre tract nor the royalties from the coal mined thereon passed under the conveyance referred to, but passed from Henry Cornett to his devisees, and from them to John W. Combs.

It appears that appellant held a coal lease on a 100-acre tract of land owned by Leslie Combs adjoining the 62-acre tract leased by Henry Cornett, and that by some kind of arrangement the royalties were apportioned and paid on the basis of four-sevenths to Leslie Combs, one-seventh to French and Mary Combs, and that the remaining one-seventh was retained by appellant, who had acquired an interest in the 40-acre tract. It is therefore claimed that John W. Combs is not entitled to recover anything more than Henry Cornett would have been entitled to recover had he lived, which was one-seventh of the royalties. The uncontradicted evidence shows that mining was not begun on the 22-acre tract acquired by John W. Combs until June 1, 1924. It is therefore clear that any arrangement between Leslie Combs and Mary and French Combs, Henry Cornett, and appellant, for the distribution of the royalties during the lifetime of Henry Cornett, related solely to the 40-acre tract, and did not include the 22-acre tract now owned by John W. Combs. That being true, the agreement, if otherwise valid, was not binding as to the 22-acre tract, and did not estop John W. Combs from

recovering royalties on the 22-acre tract from the time mining was begun.

It seems that between Henry Cornett's death on May 5, 1919, and February 20, 1928, appellant issued checks for royalties aggregating $1,548.94, payable to Henry Cornett, and that these checks were cashed by French Combs. It is therefore insisted that appellant should not be required to pay the same sum again. In reply to this contention it is sufficient to say that one who pays to a person who is dead, or who is not entitled to receive the money, does so at his peril, and such payment is not a defense against one entitled to the money and to whom the payment should have been made. Garth v. Runner's Ex'x (Ky.) 121 S. W. 681; Buchanan v. Hicks, 98 Ark. 370, 136 S. W. 177, 34 L. R. A. (N. S.) 1200; 48 C. J. 589.

Appellant's mining engineer testified that since June 1, 1924, when mining was begun on the 22-acre tract, appellant had mined therefrom approximately 50,990 tons of coal, and of this amount approximately 16,823 tons had been taken out since February 1, 1927. As the suit was filed on January 24, 1928, and the witness testified on June 21, 1928, and no amendment covering the intervening period was filed, it is insisted that the court erred in rendering judgment for the coal mined during that period. We do not reverse except for errors prejudicial to the substantial rights of appellant. All that the evidence shows is that a certain amount of coal was mined between June 1, 1924, and the time at which the witness testified. It does not disclose how much was mined between the filing of the petition and the rendition of the judgment. Even if some portion of the coal was mined between those two periods, the judgment will protect appellant from any further payment, and we perceive no good reason why the judgment should be reversed for the purpose only of filing an amendment for the recovery of royalties admitted to be due, when it is not clear from the record how much, if any, of the coal was mined after the filing of the petition.

Judgment affirmed.