## Clark et al. v. Thompson.

## Mitchell et al. v. Clark et al.

June 11, 1948.

As Modified on Rehearing March 25, 1949.

852

J. Verser Conner and Charles E. Keller for appellants.

Charles E. Keller, John E. Richardson, J. R. Layman, C. E. Morgan, H. R. Whitlow, Joseph Martin, and Milby & Henderson for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Reversing.

These cases have been as vexatious to us as they were to the litigants, lawyers and trial court during the eight and a half years they have been pending. They began as a simple suit on an unsecured note for $20,-088.24 and a plea of payment. Later, a suit was filed by one of the plaintiffs in that action, a former ward, against his guardian and the sureties on her bonds for an accounting and recovery. In the first suit, the defendant stated that at the same time he had executed the note to Katie Mitchell Clark as guardian he had given Mrs. Clark as an individual his note for $5,000 and pleaded its payment. The transactions had related to both of these notes interchangeably and as though there were but one obligation. The evidence unfolded a novel and confusing handling of other people's money and an extreme disregard of fiduciary accountability by a guardian and her banker, counsellor and debtor. There was an inextricable commingling of personal and fiducial funds.

Richard L. Mitchell, of Metcalfe County, died intestate in February, 1919, survived by a widow and son, fifteen months old; also two other children by a former marriage who are not involved in this litigation. A. J. Thompson, a banker and lawyer and a close friend, became the counsellor of the young widow. He also became surety on some of her bonds as guardian. It seems that every dollar that came into the guardian's hands

was promptly borrowed by Mr. Thompson, as were nearly all the funds which came to the widow personally, and all that without security. The parties differ as to the respective amounts. The court records show that $14,-930 came into the guardian's hands, which she says is the amount he procured, but Thompson says he borrowed only $12,185 of the ward's funds and only $8,950 of Mrs. Mitchell's money, although she received approximately $15,000 and claims to have originally loaned him $11,950. She testified she had understood that all the money was being loaned to Mr. Thompson's bank, but throughout the years all of her transactions, except the drawing of checks, was with him personally. Concerning the child's part, he had told her that interest would be accrued so that when he became of age he would have a nice fortune.

Mrs. Mitchell opened a personal checking account in the bank. There was never any bank account in her capacity as guardian. In 1922 she married Ed Clark. They continued to live in Metcalfe County until they moved to New Albany, Ind., in 1925, and later to Louisville. But the account continued in the Edmonton bank. This was often overdrawn. The overdrafts were satisfied either by Mr. Thompson making a deposit in the account and having her execute notes to him for the amount, or by having her execute notes to the bank which he would later pay and then obtain a note from her payable to himself personally. This was the general system instead of pursuing the normal course of crediting his obligations and issuing receipts therefor.

There was a settlement of accounts between Mr. Thompson and Mrs. Clark resulting in the execution by him on May 7, 1931, of an unsecured note for $20,088.24 payable to Katie Mitchell Clark, guardian, representing the principal and accrued interest of the ward's money and another note to her personally for $5,000. It is impossible for anyone to determine whether these sums represent the true amounts due at that time, but Mrs. Clark and her son are now content to begin with them and not go back of these instruments for an accounting.

Buford Mitchell became twenty-one years old on November 14, 1938. About a year thereafter Mrs. Clark

as guardian filed suit to recover on the note for $20,-088.24 and interest. The defendant, Thompson, raised the point that, since her ward had reached his majority and her guardianship had terminated, she could not maintain the action. It was thereupon dismissed. Buford Mitchell then executed a paper, called a receipt, by which he acknowledged transfer of the note or a pro tanto interest therein (the difference of construction becoming later a sharp issue in the case). A new joint suit was filed in December, 1939, by Mrs. Clark, individually and as guardian, and Buford Mitchell against Thompson, seeking a recovery on that note. The defendant pleaded payment through deposits made by him to Mrs. Clark's credit in the bank.

It was disclosed in the voluminous record that the personal bank account of Mrs. Clark became one for her family. Both she and her husband made some deposits and drew checks on it. As the boy grew up, particularly after he went to college in 1935, he too drew checks on the account. The same novel method of handling their mutual transactions observed prior to 1931 was continued by Mrs. Clark and Mr. Thompson. Again there were frequent and sometimes large overdrafts in the account. Mr. Thompson continued to accept Mrs. Clark's notes to cover or cancel them; also to place to her credit sums representing interest on both of his obligations. He made no distinction and continued to treat them as one, at least until June, 1938. As might have been expected, a very confusing state of affairs resulted. Mr. Thompson himself in his pleadings and testimony differed from time to time in admissions as to what sum he actually owed. He first stated he owed $956.93 on both obligations, but by amendments to his pleading he eventually raised the amount to $2,361.82. In addition to his plea of payment, he pleaded a settlement as of June 8, 1938, and a ratification of all the transactions by the plaintiff, Buford Mitchell, after he became twenty-one years old.

Before the case on the note was submitted, another suit was filed in February, 1942, by Buford Mitchell against his mother as guardian and the sureties on her several bonds, including Thompson. Although some other calculations are recited and claims asserted, eventually this suit and its claims began with the amount of

the note executed to the guardian by Thompson on May 7, 1931, for $20,088.24. The plaintiff charged that there was due him on the day he became twenty-one years old the sum of $36,965.02, less certain credits which he acknowledged. The guardian by answer confessed the allegations of the petition, and filed a cross-petition against Thompson. He and other sureties made defense, respectively. Thompson entered a traverse and made certain affirmative defenses, to be later considered. Much of the evidence taken in this case is a substantial duplication of that taken in the note suit. An order was entered overruling a motion by the defendant Thompson to consolidate the cases but authorizing evidence offered in either case to be considered in the other. The case was referred to two special commissioners. They treated both the note given the guardian and that given Mrs. Clark personally as a single obligation and found that Thompson owed on the guardian note as of September 9, 1939, the sum of $4,589.94. Upon exceptions, the case was re-referred to the commissioners and they filed a supplemental report to the effect that they had considered all the bank records in connection with the evidence in the cases and had endeavored to segregate the two obligations, but found it impossible to do so. The circuit court in his review of the record listed charges and credits, including mutual interest calculations, and rendered judgment against Thompson for $5,147.54, with interest from September 9, 1939, in favor of Buford Mitchell. He denied Mrs. Clark any recovery. The court adjudged that the judgment in the note suit was res adjudicata of the claim asserted on the guardian's bonds and dismissed Mitchell's petition.

Appeals from the two judgments have been brought separately but we must regard them as in effect but one suit.

It seems to us that the proper approach is to consider first this outstanding fact, namely, that as of May 7, 1931, the infant's estate amounted to $20,088.24. He was then thirteen years old. When he became of age, computing simple interest at 6 per cent, he would have been entitled to receive $29,148, and much more by computing annual interest. However, Mitchell concedes having received from Thompson sums of money between June, 1938, (five months before he reached his majority),

and September, 1939 (ten months afterward), aggregating $6,549.54. In addition, he is willing that there should be charged to him $3,848.82 spent by his mother and himself for his college education. Disregarding interest on these credits, he still had coming to him nearly $19,000. Instead of that sum, he recovered a judgment for only $5,147.51, which has been satisfied by Mr. Thompson. On the face of it, somebody owes him the difference of nearly $14,000 and the burden rests on the guardian and Mr. Thompson to show it to be otherwise.

The statutes authorize a guardian to provide for the necessary and proper maintenance and education of his ward out of his estate. KRS 387.060. But no disbursements shall be allowed the guardian on that account beyond the income of the estate (in the absence of specific authority in a deed or will under which the estate is derived) unless it is best for the ward that the principal of his personal estate be applied for those purposes with the approval of such expenditures by a court either before they are made or upon a settlement of the guardian's accounts. KRS 387.120. This ward lived with his mother and stepfather, except when in college from 1935 until his graduation in 1939, a few months after he became twenty-one years old. But there is no evidence of any intention on their part, or of any necessity, to charge his estate with the cost of his maintenance. Ordinarily a guardian may not make expenditures exceeding the income from the ward's estate. McCoy v. Ferguson, 249 Ky. 334, 60 S.W.2d 931, 90 A.L.R. 891. The cases of Burton's Adm'r v. Selph, 118 S.W. 286; Center v. Rose, 252 Ky. 463, 67 S.W.2d 698; Davidson's Adm'x v. Davidson, 274 Ky. 28, 117 S.W.2d 1044; Hammons v. Musselman's Adm'x, 282 Ky. 507, 139 S.W.2d 423; and Ray v. Spencer, 290 Ky. 756, 162 S.W.2d 789, show the high responsibility of a guardian with respect to the care of the estate, particularly, his liability for unauthorized expenditures, even though they may have been made in good faith and were seemingly reasonable and proper. The final control of expenditures of this kind is in the court of chancery. Funk's Guardian v. Funk, 130 Ky. 354, 113 S.W. 419. No judicial approval was ever sought by Mitchell's guardian, and there has been little, if any, effort made in this case to allocate or identify any credits claimed for legitimate purposes.

The burden was upon the defendant to justify all the expenditures. Center v. Rose, 252 Ky. 463, 67 S.W.2d 698. But as stated, the ward has recognized his moral obligation to bear, and the legitimacy of, the expenses of his college education.

Concerning the measure of liability, or the degree of burden of establishing the right to any credits claimed against the ward's estate, it may be pointed out that where a guardian uses and commingles funds of his ward with his own, he must extricate himself and establish his right to credit by clear and certain evidence. Clay v. Clay, 60 Ky. 548, 3 Metc. 548; Dawson v Jenkins, 199 Ky. 420, 251 S.W. 205; Robertson's Guardian v. Fidelity & Casualty Co., 227 Ky. 114, 12 S.W.2d 298.

We have not undertaken to state in full the evidence manifesting the control of the financial affairs of the guardian by Mr. Thompson. It seems sufficient to say that his dominance over the personal account of the guardian in the bank of which he was president, and the confidence reposed in him, as well as the borrower of all the estate, made him substantially a joint guardian or a guardian de son tort. His active participation in the unauthorized disposition of the ward's estate (wholly represented by his note to the guardian) by paying the various sums to her, knowing that they had been expended for purposes other than those legally authorized, makes him just as responsible as the guardian herself for any misappropriation.

In Taylor v. Harris' Adm'r and First National Bank v. Harris' Adm'r, 164 Ky. 654, 176 S.W. 168, 173, Harris, a guardian, loaned his ward's money to Taylor at 6 per cent and he in turn loaned it back to Harris individually at 8 per cent. Harris died insolvent. In an action by a successor guardian to recover of Taylor the amount loaned him, we said, among other things pertinent to the case at bar:

"There can be no doubt from the admission contained in his answer, and all the evidence appearing in the record, that the money he claimed to have borrowed of Harris, and in turn loaned the latter, is identified as a part of the corpus of the trust estate belonging to

Foster Lee Threlkeld, infant ward of the present guardian, People's Bank & Trust Company; and, as the fund was traced into his hands and clearly identified, the burden was upon him to show by satisfactory proof such payment or disposition thereof as would release him from liability to the cestui que trust. Under the circumstances he is to be treated as a quasi trustee, and therefore liable for the misappropriation shown of the trust fund; for the law does not permit a guardian to convert to his own use a trust fund, as was done by the former guardian in this case, and one cannot assist him in such wrongful conversion of the trust fund, as was done by the appellant Taylor, without becoming equally liable with the guardian for the loss resulting to the cestui que trust therefrom.''

In the appeal of the bank there was a claim against it upon a note payable to the guardian, which had been discounted by the bank and the proceeds placed to his individual credit. The deposit was subsequently paid out on his checks in satisfaction of his individual debts without inquiry. We held the bank had knowingly participated in the conversion of the money of the ward by the guardian and therefore was liable as a trustee of the fund. The responsibility of Thompson is like that of a bank, which having notice of the withdrawal of fiduciary funds for the personal use of a trustee or agent is liable therefor to the beneficiary or principal. First National Bank v. Stringer, 207 Ky. 230, 268 S.W. 1101; People's National Bank v. Guier, 284 Ky. 702, 145 S.W. 2d 1042.

It is necessary now to consider certain other conintentions of the appellee, Thompson, by which he seeks to avoid liability.

After the dismissal of the first suit on the note instituted by Mrs. Clark as guardian, Buford Mitchell executed the following instrument:

"Received of Katie Mitchell Clark my guardian a transfer of the sum of $22,741.32 in a promissory note executed to said guardian by A. J. Thompson, which is accepted by me as the balance in full due me by her as my said guardian. This the 23rd day of December 1939.''

Appellee claims that this is a novation; that ac-

860

ceptance of the note was a full and complete settlement of the account of the guardian, and acceptance or recognition of credits on account of advancements or payments to her, both personally and as guardian. It is claimed that the true agreement was that the ward would endeavor to collect the amount of the note, but if he did not succeed, his mother individually and not as guardian would owe him the balance. Furthermore, it is claimed that in suing on the note sui juris, the former ward ratified this contract of settlement.

There would never have been such a transaction had not the defendant successfully challenged the guardian's right to maintain the action on the note after the majority of her ward, which, incidentally, seems to be a debatable question. The evidence concerning this instrument is that of the mother and son. It is that following the dismissal of the first suit because of Mrs. Clark's incapacity to sue as guardian, their attorney, who is now dead, had him execute the paper in order that he could join in the suit which was later filed and for no other purpose. If it be regarded as an assignment, the young man acquired nothing by virtue of the instrument which he did not already own legally and equitably. The language of the paper is only an acknowledgment of a definite part of the note prima facie as representing the balance due the ward by the guardian. This was what they estimated to be his proportionate part of the note. There was neither purpose nor consideration for any release by the ward of the responsibility of the maker of the note. It did not lessen his obligation and did not constitute an accord and satisfaction of an unliquidated or disputed item as between the maker and the payee, or the assignee of a part of the note. Being only a receipt it is not conclusive but was subject to explanation as to consideration and purpose by parol evidence. Jones v. Riddell, 224 Ky. 245, 5 S.W.2d 1077; Bullock v. Young, 252 Ky. 640, 67 S.W.2d 941; 20 Am. Jur., Evidence, Sec. 1109; 25 Am.Jur., Guardian and Ward, Sec. 166. All the circumstances support the testimony that this transaction was only to make it convenient or possible for him and his mother to proceed jointly against the maker of the note. It had already been developed, and very emphatically so, that the maker was claiming it to have been substantially satisfied, and also

that he had participated in, if not altogether caused, great confusion of funds.

The case of Greenup v. U. S. Fidelity & Guaranty Co., 159 Ky. 647, 167 S.W. 910, relied on by the appellee, is not in point, for the right of the former ward to recover from sureties on her guardian's bond was denied on the ground of laches and no opinion was expressed as to the loss of any right by having accepted a note and receipt in settlement of the guardian's accounts. Nor is Fidelity & Casualty Co. of New York v. Miller, 220 Ky. 123, 294 S.W. 1093, where a ward had received good checks for the balance due her and held them a long time, during which interval they became worthless. The defense of laches is not available in this case for there was no unreasonable delay nor resulting prejudice. Wisdom's Adm'r v. Sims, 284 Ky. 258, 144 S.W.2d. 232.

As stated in Northwestern Mutual Life Insurance Co. v. Eddleman, 247 Ky. 116, 56 S.W.2d 561, 562, 87 A.L.R. 276:

"Whether a novation has been accomplished or not depends upon the intention of the parties. This intent is the controlling element in determining the question, and unless the transaction was intended to extinguish the old obligaton by substituting the new one therefor, a novation is not effected."

We think the proper construction of this transaction is that Mitchell accepted the note on condition that he was able to collect the amount stated therein, namely, $22,741.32. Under this conclusion, the argument as to election of remedies fails for there are no inconsistencies in the proceedings which followed. So far as Mitchell was concerned, the burden was upon the defendant, Thompson, in both suits to support his plea of payment. The essential counter-defense was that Mitchell had not received those payments or the benefits thereof if made. The suit on the guardian's bonds was to recover his entire estate, less the admitted credit for money received after he became of age. This involved going back to the very beginning. The note constituted evidence of only a part of what he claimed was due him by his guardian and the sureties on her bonds. The plaintiff did not undertake to assert the truth of each of two irreconcilable facts, or to claim inconsistent rights, or take contradictory positions, which are the essentials of the doctrine

of election of remedies. Potts v. Strickland, 304 Ky. 777, 202 S.W.2d 392; Banco Kentucky Co.'s Receiver v. National Bank of Ky.'s Receiver, 281 Ky. 784, 137 S.W.2d 357.

It is contended by the appellee, Thompson, that from time to time prior to June 8, 1938, Mitchell had agreed to his right to the credits claimed by him and that he did not disaffirm such agreements after he became of legal age but ratified them by the so-called receipt of December 23, 1939. A specific agreement made in the summer of 1938 is especially relied upon. Mr. Thompson and Mrs. Clark had a conference in Louisville in the early part of June, 1938, at which he submitted a detailed statement of charges and credits on his indebtedness to her individually and as guardian. On June 8 he wrote Mrs. Clark in response to a card received from her, "I thought you knew we only made a partial settlement," and therein submitted a balancing of accounts which showed he owed $5,037.05 on both obligations, that is, the guardian note of $20,088.24 and the individual note of $5,000. In this letter he suggested that the matter of accounting be held in abeyance "until we get our matters in better shape." A few days afterward there was a meeting in Edmonton of the three parties. Perhaps two or three meetings. Thompson testified there was a definite agreement that the individual note had been satisfied and the guardian note reduced to approximately $7,500 through the credits theretofore given or payments made to the mother and to the ward and that these were accepted by the young man as being proper and right. The mother and son testified that the only agreement he made was to accept what had been paid on account of his expenses at college. We think subsequent transactions as well as correspondence indicating that there had been no final understanding support the version of the appellants.

But underlying the entire point is the fact that Mitchell was still under age and, of course, could not bind himself. To avoid this, and Mitchell's objection in the course of the law suit and now to allow any credit for payments made to the mother individually or on any other account, the appellee contends there was no plea of infancy. Of course infancy is a special plea to be interposed by the party. But it was implicit throughout the pleadings. The petition set forth the fact that the

note was prepared by the defendant and made payable to the guardian. The defendant's answer and counterclaim alleged that at the instance and request of the plaintiffs, respectively, he had made payments on the note by depositing various sums in the bank to the account of the plaintiff as guardian and to her individually as well as to Mitchell himself. These were in her personal bank account. The reply admitted the deposit of various sums but denied that such was done at the special instance or request of either party and that the deposits were "for moneys going to these plaintiffs from the defendants from other matters independently of said note." Among many other denials is that which denied the defendants to be entitled to any of the alleged credits claimed by him.

We might well dispose of the point by relying upon the provision of Sec. 134, Civil Code of Practice, that no judgment shall be reversed or affected by reason of any error or defect in the proceedings relating to pleading which does not affect the substantial rights of the adverse party. Of like character in general is Sec. 756. See Cobb v. Farmers & Merchants Bank, 267 Ky. 744, 103 S.W.2d 264; Brewer v. Terrill, 275 Ky. 756, 122 S.W.2d 749; Catron v. Jones, 281 Ky. 163, 135 S.W.2d 419. But we may go further.

On the question of allowing credits, the defendant had pleaded payment and the burden was upon him to prove payment to a person authorized to receive it. Columbus Mining Co. v. Combs, 233 Ky. 476, 26 S.W.2d 26. While Mrs. Mitchell was authorized to receive payment as guardian, most of the credits claimed were to her personal bank account and withdrawn by her with knowledge on the part of Thompson that the money was being diverted and not used in her fiduciary capacity. His consequent liability has been already considered. See of special application Taylor v. Harris' Adm'r and First National Bank v. Harris' Adm'r, supra, 164 Ky. 654, 176 S.W. 168.

We do not believe the point to be well made that Mitchell, by admitting part of the credits claimed by the appellee, thereby must be held to have ratified all similar payments. This contention rests on the rule that one may not ratify part of a contract without ratifying all of it,

and may not rescind a contract in part but must do so in toto. That rule cannot possibly apply. The admitted credits represent the sums spent for the appellant's education, and he recognized them as a moral, if not legally authorized, use, and the sums actually received by him shortly before and after he reached his majority. He had the right to accept them and deny the other claimed credits.

We are of the opinion that none of the technical defenses interposed by the appellee are sustainable, and, as stated above, that Mr. Thompson is liable for any unauthorized expenditure of the ward's funds as represented by his payments to the guardian because he knowingly permitted or participated in the diversion. He dealt with the funds of the infant at his peril.

We do not think the court ruled correctly in holding the judgment on the note res adjudicata of the suit on the guardian's bond. The cases were considered by the court together and the judgments were rendered therein simultanously. In the note suit, the court merely held that after allowing all the credits to which the maker was entitled, there remained a balance due on the note of $5,-147.54. The question of misapplication of funds or an illegal dissipation of the ward's estate was not involved in the note suit. Nothing therein adjudged determined that the guardian or Thompson had paid over the estate to the ward. It only adjudged that Thompson owed the guardian and ward the sum stated. But if it should have been a proper ruling of res adjudicata, then that judgment, insofar as it related to the credits on the guardian's note, is erroneous for it makes no distinction between what are authorized and what are unauthorized charges against the infant's estate.

The circuit court, under his view of the case, had no occasion to pass on the question of liability of any of the sureties on the bond. We do not, therefore, consider it but leave the question open.

We take up the appeal by Mrs. Clark. She argues that there has never been any complete satisfaction of her personal claims against Mr. Thompson for money loaned him. She introduced evidence that subsequent to the acceptance of the $5,000 note on May 7, 1931, she loaned him additional sums aggregating $8,200, for

which he executed another note in January, 1933. This, she says, was later taken up as having been paid, but the payments are now included in the accounting for her $5,000 note and the $20,088 guardian note. Supporting this claim are witnesses who saw the note; a memorandum in Mr. Thompson's hand showing computation of interest on that sum for one year; and reference in a letter to Mrs. Clark on June 8, 1938, following the meeting in Louisville referred to, in which he says there was a balancing of accounts. This letter states he then owed a balance of $5,037.05, of which sum $1,350.22 was due her personally and $3,686.83 interest due her ward. There are some incidental references in Mr. Thompson's testimony and other evidence tending to support the claim of the existence of such a note. Thompson denies there was ever any additional loans or any such transaction. He, too, has some persuasive support. The trial court made no special reference to this transaction, but apparently was not convinced there was an additional loan.

Mrs. Clark also contends there were several duplications in the credits which the court allowed the defendant on the two notes, which, as we have said, were treated as one obligation.

In view of the fact that it will probably be found that she as guardian and Mr. Thompson as debtor and quasi-trustee are not entitled to credits for much of the expenditures of the ward's estate, Mr. Thompson would be entitled to assert the right of recoupment from her personally as the beneficiary of those expenditures. So if all of Mrs. Clark's present claims should be found to be proper, they probably would not amount to enough to authorize a judgment in her behalf against him.

It seems to us that both judgments should be reversed and the case remanded that the chancellor may consider the whole matter in the light of the views expressed herein.

The judgments are reversed for proceedings consistent herewith.

Judge Latimer dissenting.